James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendants
UNITED STATES DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO,
    FIREARMS AND EXPLOSIVES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| JOHN LINDSAY-POLAND, | Case No. 3:22-cv-7663-EMC |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | Date: October 19, 2023, 1:30 p.m. |
| UNITED STATES DEPARTMENT OF JUSTICE; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | Location: Via Zoom |
| Defendants. | Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 1

A.      The Freedom of Information Act ................................................................. 1

B.      The Firearms Tracing System ..................................................................... 2

C.      The Tiahrt Rider .......................................................................................... 2

D.      Second and Ninth Circuit Precedent .......................................................... 4

E.      The FOIA Request ....................................................................................... 6

LEGAL STANDARD ............................................................................................... 8

ARGUMENT ............................................................................................................ 8

A.      The Tiahrt Rider bars disclosure unless its Exception C applies. ............. 8

B.      Exception C to the Tiahrt Rider does not apply ....................................... 13

        i.      Plaintiff has not shown that he is a representative of the news
                media. ............................................................................................. 14

        ii.     Some of the requested information is not statistical aggregate data. ........ 18

CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Cause of Action v. FTC*,
    799 F.3d 1108 (D.C. Cir. 2015) .................................................................. 15, 16, 17

*City of Chicago v. U.S. Dep't of Treasury*,
    287 F.3d 628 (7th Cir. 2002) .................................................................... 2, 10

*City of Chicago v. U.S. Dep't of Treasury*,
    384 F.3d 429 (7th Cir. 2004) .................................................................... 3, 11

*City of Chicago v. U.S. Dep't of Treasury*,
    423 F.3d 777 (7th Cir. 2005) .................................................................... 3, 11

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.*,
    14 F.4th 916 (9th Cir. 2021) .................................................................. *passim*

*Dorsey v. United States*,
    567 U.S. 260 (2012).................................................................. 9, 10, 12, 13

*Everytown for Gun Safety Support Fund v. ATF*,
    984 F.3d 30 (2d Cir. 2020)...................................................................... *passim*

*Hamdan v. U.S. Dep't of Just.*,
    797 F.3d 759 (9th Cir. 2015) .................................................................... 1

*Judicial Watch, Inc. v. Rossotti*,
    326 F.3d 1309 (D.C. Cir. 2003) ................................................................ 16, 17

*National Security Archive v. U.S. Department of Defense*,
    880 F.2d 1381 (D.C. Cir. 1989).................................................................. 15

*Nat'l Treasury Emps. Union v. Griffin*,
    811 F.2d 644 (D.C. Cir. 1987)................................................................ 16

**STATUTES**

5 U.S.C. § 552(a) ...................................................................................... 1

5 U.S.C. § 552(b) ...................................................................................... 1

5 U.S.C. § 552(a)(4)(A)(ii) ........................................................................ 14, 15, 16

5 U.S.C. § 552(a)(4)(A)(vii) ...................................................................... 17

5 U.S.C. § 552(a)(4)(B) ........................................................................................ 8

5 U.S.C. § 552(b)(3) .................................................................................... 1, 10, 12

5 U.S.C. § 552(b)(3)(B) ................................................................................... 2, 4, 8

18 U.S.C. § 923 ........................................................................................... 12, 18

Consolidated and Further Continuing Appropriations Act, 2012,
  Pub. L. No. 112-55, 125 Stat. 552 (2011) ............................................... *passim*

Consolidated Appropriations Act, 2005,
  Pub. L. No. 108-447, 118 Stat. 2809 (2004) ................................................ 3, 11

Consolidated Appropriations Act, 2008,
  Pub. L. No. 110–161, 121 Stat. 1844 (2007) .............................................. 4, 13

Consolidated Appropriations Resolution, 2003,
  Pub. L. No. 108-7, 117 Stat. 11 ...................................................................... 2

Freedom of Information Reform Act of 1986,
  Pub. L. No. 99-570, 100 Stat. 3207 .............................................................. 15

OPEN FOIA Act of 2009,
  Pub. L. No. 111-83, 123 Stat. 2142 ............................................................ 1, 4

Openness Promotes Effectiveness in our National Government Act of 2007,
  Pub. L. No. 110-175, 121 Stat. 2524 ............................................................ 15

**LEGISLATIVE HISTORIES**

H.R. Rep. No. 110-240 (2007) ...................................................................... 3, 13

**OTHER AUTHORITIES**

ATF, Data & Statistics,
  https://www.atf.gov/resource-center/data-statistics ........................................ 2

ATF, Following the Gun: Enforcing Federal Laws Against Firearms Traffickers
  (June 2000),
  https://web.archive.org/web/20041016161552/http://www.atf.gov/pub/fire-
  explo_pub/pdf/followingthegun_internet.pdf ................................................ 2

1

**INTRODUCTION**

2       This case concerns a Freedom of Information Act (FOIA) request for records from

3 the Firearms Tracing System database maintained by the Bureau of Alcohol, Tobacco,

4 Firearms and Explosives (ATF).  In an appropriations rider, Congress prohibited ATF from

5 disclosing the "contents" of that database, and rendered them "immune from legal

6 process."  Pub. L. No. 112-55, 125 Stat. 552, 609–10.  The Ninth Circuit has found an

7 exception to that prohibition for representatives of the news media seeking "statistical

8 aggregate data."  *Id.*  at 610.  But the record before the agency did not show that the

9 requester is a representative of the news media, and at least some of the information that

10 he seeks is not "statistical aggregate data."  ATF properly denied his FOIA request, and is

11 therefore entitled to summary judgment.

12

**BACKGROUND**

13 **A.**     **The Freedom of Information Act**

14       The Freedom of Information Act provides a right of public access to government

15 records, *see* 5 U.S.C. § 552(a), limited by nine statutory exemptions, *id.* § 552(b).  As

16 relevant here, "Exemption 3 protects records exempt from disclosure pursuant to a separate

17 statute."  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 775 (9th Cir. 2015).  The

18 exemption covers "matters that are . . . specifically exempted from disclosure by

19 statute . . . , if that statute" either "requires that the matters be withheld from the public in

20 such a manner as to leave no discretion on the issue" or "establishes particular criteria for

21 withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).

22 Since the OPEN FOIA Act of 2009, later-enacted statutes must also "specifically cite[] to"

23 Exemption 3 in order to come within its scope.  Pub. L. No. 111-83, § 564, 123 Stat. 2142,

1    2184 (Oct. 28, 2009), *codified at* 5 U.S.C. § 552(b)(3)(B).

2    **B.    The Firearms Tracing System**

3        ATF is authorized to trace firearms recovered by law enforcement, and any law

4    enforcement agency may ask ATF for "trace data," *i.e.*, transaction information used to

5    track a recovered firearm from its manufacture or import until its first retail purchase.  Siple

6    Decl. ¶¶ 4–6; *see Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916,

7    923 (9th Cir. 2021).

8        ATF records all trace data in the Firearms Tracing System[1] (FTS) database, the

9    primary purpose of which is to aid law enforcement.  ATF has a long history of using FTS

10   data for statistical analyses and reports, which may reveal patterns or trends in the

11   movement and recovery of firearms.  *Ctr. for Investigative Reporting*, 14 F.4th at 923–24;

12   *see, e.g.*, ATF, Following the Gun: Enforcing Federal Laws Against Firearms Traffickers

13   (June  2000),  https://web.archive.org/web/20041016161552/http:/www.atf.gov/pub/fire-

14   explo_pub/pdf/followingthegun_internet.pdf;  ATF,  Firearms  Trace  Data—Annual

15   Reports, https://www.atf.gov/resource-center/data-statistics.

16   **C.    The Tiahrt Rider**

17       Beginning in 2003, Congress enacted a series of appropriations riders commonly

18   known by the name of their chief sponsor, Rep. Tiahrt of Kansas.  Prompted by a Seventh

19   Circuit ruling ordering ATF to disclose trace records, *City of Chicago v. U.S. Dep't of*

20   *Treasury*, 287 F.3d 628, 632 (7th Cir. 2002) ("*Chicago I*"), Congress generally prohibited

21   the use of appropriated funds to respond to FOIA requests for such records.  Pub. L. No.

---

[1] ATF has sometimes referred to this database as the Firearms Trace System, and other times as the Firearm Trace System.  The agency's preferred usage is now "Firearms Tracing System."

1   108-7, 117 Stat. 11, 473–74 (2003); *see Everytown for Gun Safety Support Fund v. ATF*,

2   984 F.3d 30, 34–36 (2d Cir. 2020).

3       When the Seventh Circuit held that this funding restriction did not exempt trace

4   records from FOIA, Congress enacted a modified Tiahrt Rider that also made the data in

5   the Firearms Tracing System "immune from legal process." Pub. L. No. 108-447, 118 Stat.

6   2809, 2859–60 (2004); *see City of Chicago v. U.S. Dep't of Treasury*, 384 F.3d 429, 432–

7   33 (7th Cir. 2004) ("*Chicago II*"), *vacated on reh'g*, 423 F.3d 777 (7th Cir. 2005)

8   (*"Chicago III"*).  In light of "Congress' obvious intention in adding the 'immune from legal

9   process' language to the funding restriction," the Seventh Circuit then recognized the

10  Tiahrt Rider as an Exemption 3 statute.  *Chicago III*, 423 F.3d at 780–82 (calling

11  Congress's intent "unmistakable").

12      Congress included versions of the Tiahrt Rider in subsequent appropriations bills

13  through 2012.  While Congress made modifications, the central prohibitions of the Rider

14  remained constant—barring the use of appropriated funds "to disclose part or all of the

15  contents of the [FTS] database" and providing that "all such data" is "immune from legal

16  process." Pub. L. No. 112-55, 125 Stat. 552, 609–10 ("2012 Tiahrt Rider"); *Everytown*,

17  984 F.3d at 44–49 (reproducing earlier Riders).

18      Over time, "Tiahrt Riders have become more restrictive." *Ctr. for Investigative*

19  *Reporting*, 14 F.4th at 925.  But—as relevant here—beginning with the 2008 Rider,

20  Congress sought to address concerns that the provision "ha[d] been interpreted to prevent

21  publication of [ATF's] long-running series of statistical reports" by clarifying that "those

22  reports may continue to be published in their usual form."  H.R. Rep. No. 110-240, at 63

23  (2007).  Exception C, sometimes called the "publication exception," specifies that the Rider

1    does not prevent "the publication of annual statistical reports on products regulated by

2    [ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking

3    channels, or firearms misuse, felons, and trafficking investigations." Pub. L. No. 110–161,

4    121 Stat. 1844, 1904 (2007).  And, separately, the Rider establishes that it neither impedes

5    disclosures for law enforcement, national security, or intelligence purposes, nor impedes

6    disclosures in ATF's enforcement proceedings or proceedings reviewing agency actions

7    under the Gun Control Act.  *See id.*

8         The most recent Tiahrt Rider—the 2012 version—was unchanged from 2008 in all

9    respects relevant here.  *See* 125 Stat. at 609–10.  Like prior Riders, it included words of

10    futurity, making it applicable beyond that fiscal year.  *See id.* at 609 ("thereafter").

11    **D.**    **Second and Ninth Circuit Precedent**

12         Since the enactment of the OPEN FOIA Act of 2009, *see* 5 U.S.C. § 552(b)(3)(B),

13    two federal courts of appeals have addressed FOIA requests seeking the disclosure of

14    information from the Firearms Tracing System.

15         In *Everytown for Gun Safety*, the Second Circuit concluded that the 2012 Tiahrt

16    Rider barred release of FTS data.  The court reasoned that because "ATF operates only

17    with appropriated funds, and . . . FOIA disclosure occurs subject to legal process," when

18    the "rider . . . provides that no appropriated funds may be used to disclose 'the contents of

19    the [FTS] database' . . . and that 'all such data shall be immune from legal process,'" it

20    thereby "exempts FTS data from FOIA disclosure."   984 F.3d at 40 (citation omitted).

21    Although the Tiahrt Rider does not specifically cite FOIA Exemption 3, the *Everytown*

22    court explained that Congress "was not bound to follow the specific-citation requirement

23    it had adopted in the OPEN FOIA Act" when it enacted the 2012 Tiahrt Rider.  *Id* at 39.

The *Everytown* court also considered the argument that release of the requested information would constitute "publication of . . . statistical aggregate data regarding . . . firearms misuse, felons, and trafficking investigations" under Exception C to the Tiahrt Rider. 2012 Tiahrt Rider, 125 Stat. at 610.  But the court concluded that this "publication exception" merely "allows the ATF, at its own initiative, to release statistical aggregate data regarding firearms misuse, felons, and trafficking investigations to the public," and does not authorize disclosure of such information to FOIA requesters.  *Everytown*, 984 F.3d at 44 ("If the publication exception means that FTS data relating to firearms misuse is freely available to FOIA requesters, it would eviscerate the rider's general prohibition on disclosure.").

The Ninth Circuit addressed a similar FOIA request in *Center for Investigative Reporting v. U.S. Department of Justice*, 14 F.4th 916 (9th Cir. 2021).  But the government presented its case somewhat differently, in ways that shaped the opinion.  Rather than arguing that the 2012 Tiahrt Rider barred release notwithstanding its failure to specifically cite FOIA Exemption 3, as it did in *Everytown*, the government argued that *earlier* Tiahrt Riders remained in effect, and barred release.  (Those earlier riders predated the OPEN FOIA Act of 2009, and were therefore plainly exempt from its specific-citation requirement.)  The court held that the earlier Tiahrt Riders had been implicitly repealed, and only the 2012 Tiahrt Rider remained in effect.  *Id.* at 927–32.

From that point, the panel divided.  Judge Bumatay would have held, with the Second Circuit, that the 2012 Tiahrt Rider was not bound to comply with the specific-citation requirement of the OPEN FOIA Act, because "where two statutes conflict, the later statute controls, regardless of attempts by past congresses to hobble the current legislature."

5

1   *Id.* at 942–43 (Bumatay, J., dissenting).  But the majority chose not to reach that issue,

2   because the parties had not raised it, and instead assumed "for purposes of this particular

3   case" that the earlier OPEN FOIA Act controlled the later statute.  *Id.* at 927 ("Because no

4   party has disputed that the OPEN FOIA Act applies in this case, we conclude that, for

5   purposes of this particular case, Exemption 3 does not apply."); *id.* at 932 ("Given that the

6   government has advanced no argument suggesting that the 2010 or 2012 Riders satisfy the

7   OPEN FOIA Act or that they do not need to satisfy the OPEN FOIA Act, . . . the data

8   requested . . . is not exempted from disclosure . . . .").

9        The majority went on to address the publication exception, reasoning that the Tiahrt

10   Rider might "preclude the expenditure of funds to disclose any of the FTS database's

11   contents," even if it did not exempt those contents from disclosure.  *Id.* at 933.  The majority

12   concluded that the publication exception applied, and appropriated funds could therefore

13   be expended to make the requested release, because the request sought covered "statistical

14   aggregate data" and "[t]urning over [the] data . . . to a reporter or a representative of the

15   news-media like [the requester] . . . will make that data generally known to the public." *Id.*

16   at 934.  Judge Bumatay dissented.  With the Second Circuit, he would have held that the

17   publication exception "refers to ATF's publication of prepared, formal documents of

18   aggregated statistics—not ad hoc responses to FOIA requests." *Id.* at 946.

19   **E.    The FOIA Request**

20        Plaintiff John Lindsay-Poland submitted a FOIA request to ATF on March 22,

21   2021, seeking "records based on a database query containing data on firearms recovered in

22   Mexico, Guatemala, Honduras, and El Salvador, and traced by the ATF, since Dec. 31,

23   2014." Siple Decl., Ex. A at 1 (emphases omitted).  Although his request was not a model

of clarity, ATF understands Mr. Lindsay-Poland to be seeking the following data:

- The number of traced firearms recovered in each of the four countries, in each year.

- For each country, and each year, the number of firearms recovered and traced to a federal firearms licensee from each: a) state, b) county, and c) ZIP code.

- For each country, and each year, the number of firearms recovered and traced by a) type of firearm, b) caliber of firearm, and c) manufacturer.

- The number of buyers to which recovered firearms were traced by a) year, b) country of recovery, and c) county of purchase.

- For each country, and each year, the number of federal firearms licensees to which recovered firearms were traced by a) state of purchase, b) county of purchase, c) type of firearm, and d) caliber of firearm.

*Id.* at 1–2.

Mr. Lindsay-Poland suggested that the Ninth Circuit's decision in *Center for Investigative Reporting* held that "aggregate gun trace data, such as the number of guns traced back to a general location, falls outside the Tiahrt Amendment's scope." *Id.* at 2. He also asserted that he was "mak[ing] this request as a representative of the news media." *Id.* In support of that status, Mr. Lindsay-Poland offered a single sentence: "I have published extensively on issues related to firearms trafficking in the Americas, including widely cited **research reports**, op-eds in publications such as the ***Los Angeles Times***, a **documentary film**, and a **web site** dedicated to the issue." *Id.* Each of the bold, underlined phrases contained a hyperlink.   Mr. Lindsay-Poland also identified himself as "Coordinator" of the "Stop US Arms to Mexico Project," which his request did not describe. *Id.*

1    On December 14, 2021, ATF denied the request on the grounds that release was

2    barred by the Tiahrt Rider.  Siple Decl., Ex. C.  Mr. Lindsay-Poland filed an administrative

3    appeal on March 14, 2022, arguing that the Rider "does not provide a basis for withholding

4    records that are responsive to a FOIA request" because it does not specifically cite FOIA

5    Exemption 3.  Siple Decl., Ex. D at 2.  He also argued that his request sought "statistical

6    aggregate data" covered by Exception C to the Rider, and that release was therefore

7    permitted.  *Id.* at 3.  He did not argue that he was a representative of the news media.  *See*

8    *id.*  The Office of Information Policy of the U.S. Department of Justice, which adjudicates

9    such appeals, affirmed ATF's denial on October 7, 2022.  Siple Decl., Ex. E.  Mr. Lindsay-

10   Poland sought judicial review on December 5, 2022.  *See* Compl., ECF No. 1.

11                                      **LEGAL STANDARD**

12   FOIA gives the district court "jurisdiction to enjoin the agency from withholding

13   agency records and to order the production of any agency records improperly withheld

14   from the complainant."  5 U.S.C. § 552(a)(4)(B).  Review of the agency's withholdings is

15   "de novo."  *Id.*

16                                          **ARGUMENT**

17   **A.     The Tiahrt Rider bars disclosure unless its Exception C applies.**

18   Since 2003 Congress has, in a series of appropriations riders, shielded records in

19   the Firearms Tracing System database from disclosure under FOIA.  And although the

20   current Tiahrt Rider does not expressly declare itself an Exemption 3 statute, as the OPEN

21   FOIA Act of 2009 requires, *see* 5 U.S.C. § 552(b)(3)(B), clear evidence demonstrates that

22   Congress intended the rider to preclude FOIA disclosures.

23   The Supreme Court has explained that when an earlier Congress purports to impose

8

an express-reference requirement on a later Congress's enactments, courts must evaluate the intent of the later Congress and give full effect to "the will of Congress as manifested either expressly or by *necessary implication* in a subsequent enactment." *Dorsey v. United States*, 567 U.S. 260, 274 (2012) (citation omitted).  The later Congress may have chosen to "exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified" and may have done so "by implication." *Id.*.  The "plain import" or "fair implication" of a later statute "governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference or other magical password." *Id.* (citations omitted).

As Judge Bumatay explained in *Center for Investigative Reporting*, "[c]ongressional enactments that attempt to bind subsequent congressional action are known as entrenchments."  14 F.4th at 941 (Bumatay, J., dissenting).  "Express-statement laws are a form of entrenchment: they require a later-enacted law to expressly refer to the prior law if it is to actually supersede that law."  *Id.* at 942.  But "[s]uch legislative entrenchments cannot bind future congresses."  *Id.* at 941.  Instead, "where two statutes conflict, the later statute controls, regardless of attempts by past congresses to hobble the current legislature."  *Id.* at 942.

For that reason, "the specific-citation requirement of the OPEN FOIA Act does not dictate the outcome in this case."  *Everytown*, 984 F.3d at 39.  It is true that "FTS data do not appear to fall within one of the FOIA's enumerated exemptions," because "Exemption Three applies" to recently enacted statutes "only if the statute 'specifically cites' Exemption Three," and the Tiahrt Rider does not contain such a specific citation.  *Id.* at 38–39 (quoting 5 U.S.C. § 552(b)(3)).  But "[w]hen Congress enacted the 2012 Tiahrt

1   Rider . . . it was not bound to follow the specific-citation requirement it had adopted in the

2   OPEN FOIA Act" of 2009.  *Id.* at 39.  That requirement "provides a 'background principle

3   of interpretation' of which we assume Congress is 'aware . . . when it enacts new . . .

4   statutes.'"    *Id.* (quoting *Dorsey*, 567 U.S. at 274).   Where "ordinary interpretive

5   considerations," *id.,* "indicate that Congress intended to depart from the background

6   principle when it adopted the later statute," however, then "the later enactment governs,

7   *regardless* of its compliance with any earlier-enacted requirement of an express reference,"

8   *id.* (quoting *Dorsey*, 567 U.S. at 274–75).

9          Ordinary interpretive considerations clearly demonstrate that Congress intended the

10  2012 Tiahrt Rider to prohibit the release of FTS data through FOIA, notwithstanding its

11  lack of a specific citation to Exemption 3.  "The text of the rider . . .  provides that no

12  appropriated funds may be used to disclose 'the contents of the [FTS] database' and other

13  specified information collected by the ATF . . . and that 'all such data shall be immune

14  from legal process.'"  *Id.* at 40 (quoting 2012 Tiahrt Rider, 125 Stat. at 609–10).  "Because

15  the ATF operates only with appropriated funds, and because FOIA disclosure occurs

16  subject to legal process, the rider exempts FTS data from FOIA disclosure."  *Id.*

17         And even if that plain text was inconclusive, "there can be no doubt from the history

18  and text of the rider that Congress intended to continue to exempt FTS data from FOIA

19  disclosure."  *Id.*  In 2003, "Congress passed the first Tiahrt Rider after the Seventh Circuit

20  affirmed a district court decision requiring FOIA disclosure of FTS data."  *Id.* (citing

21  *Chicago I*, 287 F.3d at 631).  And "after the Seventh Circuit continued to maintain that

22  FTS data was subject to FOIA disclosure," *id.* at 41 (citing *Chicago II*, 384 F.3d at 432–

23  33), Congress "strengthened the rider's antidisclosure language," adding "the phrase 'all

such data shall be immune from legal process,'" *id.* at 40–41 (quoting 118 Stat. at 2859). After the Seventh Circuit recognized that the congressional intent to bar FOIA access to FTS data was now "unmistakable," *Chicago III*, 423 F.3d at 782, "Congress continued to use this antidisclosure language throughout the 2000s and courts uniformly held that the Tiahrt Riders exempted FTS data from FOIA disclosure," *Everytown*, 984 F.3d at 41 (collecting cases). "There is no question, therefore, that when Congress passed the 2009 Tiahrt Rider," which preceded the OPEN FOIA Act's specific-citation requirement, "it did so intending to exempt FTS data from FOIA disclosure." *Id.*

"Because the 2009 Tiahrt Rider applied to 'fiscal year 2009 and thereafter,' that disclosure exemption would remain in effect today if Congress had not passed a subsequent Tiahrt Rider, and it unquestionably did not require a citation to Exemption Three," as it became law before the OPEN FOIA Act. *Id.* (quoting 2009 Tiahrt Rider, 123 Stat. at 575, other citations omitted). "When Congress employed the same antidisclosure language in the 2010 Tiahrt Rider and later the 2012 Tiahrt Rider, Congress is best understood to have intended that language to continue to exempt FTS data from FOIA disclosure." *Id.*

"The interceding enactment of the OPEN FOIA Act's specific-citation requirement does not overcome the elementary principle that Congress uses the same language to accomplish the same objective." *Id.* at 42. Congress would not "have reenacted the exact same language in 2010 and 2012 as it did in 2009 in order to accomplish the opposite result." *Id.* For that reason, the Second Circuit and Judge Bumatay of the Ninth Circuit correctly concluded "that the plain import of the 2012 Tiahrt Rider exempts FTS data from FOIA disclosure, and that statute must be given effect regardless of the specific-citation requirement of the OPEN FOIA Act, an earlier statute." *Id.*; *Ctr. for Investigative*

11

1    *Reporting*, 14 F.4th at 943 (Bumatay, J., dissenting) ("I would construe the OPEN FOIA

2    Act's express-statement rule as merely a 'background principle of interpretation,' and hold

3    that the later-enacted Tiahrt Amendment controls." (quoting *Dorsey*, 567 U.S. at 274)).

4            The majority opinion in *Center for Investigative Reporting* is not to the contrary.

5    The majority expressly reserved the question of whether "the OPEN FOIA Act's

6    prospective definition of statutes of exemption as those that cite to 5 U.S.C. § 552(b)(3)"

7    is "an impermissible legislative entrenchment on a later Congress's ability to create statutes

8    of exemption."  14 F.4th at 932.  The majority concluded that the issue was "clearly

9    waived" because "[n]either party raised [it] before the district court, and no party or amici

10   discussed the issue in briefing this appeal."  *Id.*  In light of the parties' waiver, the majority

11   concluded that *Center for Investigative Reporting* was "not the case to address that

12   question."  *Id.*  Instead, the majority assumed "for purposes of this particular case," that

13   the 2012 Tiahrt Rider did not exempt FTS database records from disclosure through FOIA,

14   because it did not expressly refer to Exemption 3.  *Id.* at 927; *id.* at 932 ("Given that the

15   government has advanced no argument suggesting that the 2010 or 2012 Riders satisfy the

16   OPEN FOIA Act or that they do not need to satisfy the OPEN FOIA Act, . . . the data

17   requested . . . is not exempted from disclosure . . . .").

18           There is no question that the FOIA request at issue here asks ATF to "disclose part

19   . . . of the contents of the [FTS] database."  2012 Tiahrt Rider, 125 Stat. at 609; *see* Siple

20   Decl. ¶ 18.  The "plain import" of the Tiahrt Rider is that such disclosures are prohibited,

21   unless they fall within an exception to the rider.  *Dorsey*, 567 U.S. at 274.  And that clear

22   meaning controls, even though the Rider does not comply with the OPEN FOIA Act's

23   "earlier-enacted requirement of an express reference" to Exemption 3.  *Id.* (citation

1    omitted).

2    **B.    Exception C to the Tiahrt Rider does not apply.**

3        The Tiahrt Rider includes "three exceptions to the stated . . . prohibitions," *Ctr. for*

4    *Investigative Reporting*, 14 F.4th at 933, on disclosure of "the contents of the [FTS]

5    database," 2012 Tiahrt Rider, 125 Stat. at 609.   Exception C to the Rider allows for "the

6    publication of annual statistical reports on products regulated by [ATF] . . . or statistical

7    aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse,

8    felons, and trafficking investigations."  *Id.* at 610.   That exception first appeared in the

9    2008 Tiahrt Rider, 121 Stat. at 1904, because earlier riders "ha[d] been interpreted to

10   prevent publication of [ATF's] long-running series of statistical reports."  H.R. Rep. No.

11   110-240, at 63 (2007).   The newly-added Exception C was meant to clarify that "those

12   reports may continue to be published in their usual form."  *Id.*  The Second Circuit has held

13   that it does no more than that.  *Everytown*, 984 F.3d at 44 (concluding that the "publication

14   exception" merely "allows the ATF, at its own initiative, to release statistical aggregate

15   data regarding firearms misuse, felons, and trafficking investigations to the public").

16       But in *Center for Investigative Reporting*, a divided panel of the Ninth Circuit

17   disagreed.  The majority held that Exception C authorizes ATF, using appropriated funds,

18   to make FOIA disclosures of covered "statistical aggregate data," 2012 Tiahrt Rider, 125

19   Stat. at 610, to "a reporter" or "a representative of the news-media," who "will make that

20   data generally known to the public," *Ctr. for Investigative Reporting*, 14 F.4th at 934

21   (citation omitted).  The court reasoned that when ATF releases information to reporters

22   and other representatives of the news media, "it in effect makes that information generally

23   known to the public," and that such "disclosures" therefore "effectively constitute

13

1    publication" under Exception C.  *Id.* at 935.  In dissent, Judge Bumatay worried that it

2    would prove difficult to determine who was a representative of the news media, *see id.* at

3    946 n.9, but the majority suggested that "concerns about defining who counts as a

4    representative of the news-media" could be addressed by reference to 5 U.S.C.

5    § 552(a)(4)(A)(ii), which exempts such representatives from certain fees that would

6    otherwise be charged for responding to their FOIA requests.  *Id.* at 934 n.14 (citation

7    omitted).[2]

8        Under Ninth Circuit precedent, then, to come within the Tiahrt Rider's publication

9    exception, a requester must show that he is a "representative of the news-media" and that

10   he seeks covered "statistical aggregate data." *Ctr. for Investigative Reporting*, 14 F.4th at

11   934.  Mr. Lindsay-Poland has not shown that he satisfies the first criterion.  And as to the

12   second, at least some of the information that he seeks is not "statistical aggregate data."

13        **i.    Plaintiff has not shown that he is a representative of the news media.**

14        The Ninth Circuit has suggested that, for purposes of Exception C to the Tiahrt

15   Rider, courts should analyze claims to be a representative of the news media as they do

16   under 5 U.S.C. § 552(a)(4)(A)(ii).  *Ctr. for Investigative Reporting*, 14 F.4th at 934 n.14.

17   That provision exempts any FOIA requester who is a "representative of the news-media "

18   from certain fees that could otherwise be charged.  *Id.*  Congress added that category to the

---

[2] Judge Bumatay dissented, and would have held with the Second Circuit that Exception C
to the Tiahrt Rider "refers to ATF's publication of prepared, formal documents of
aggregated statistics—not ad hoc responses to FOIA requests."  *Ctr. for Investigative
Reporting*, 14 F.4th at 946.  Although the majority opinion is obviously binding precedent
here, in case of further review ATF wishes to preserve the argument that Judge Bumatay
and the Second Circuit were correct on this point.

statute in 1986, but did not define it.[3]  The D.C. Circuit offered a definition in *National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989), which Congress ratified in 2007.[4]  *See Cause of Action v. FTC*, 799 F.3d 1108, 1119–20 (D.C. Cir. 2015).  The statute now provides that:

> [T]he term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.  In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public.  These examples are not all-inclusive.  Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities.  A freelance journalist shall be regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the journalist is actually employed by the entity.  A publication contract would present a solid basis for such an expectation; the Government may also consider the past publication record of the requester in making such a determination.

5 U.S.C. § 552(a)(4)(A)(ii).

In his FOIA request, Mr. Lindsay-Poland included the following statement: "I make this request as a representative of the news media.  I have published extensively on issues related to firearms trafficking in the Americas, including widely cited **_research reports_**, op-eds in publications such as the **_Los Angeles Times_**, a **_documentary film_**, and a **_web site_** dedicated to the issue." Siple Decl., Ex. A at 2.  Each bold, underlined phrase contained a hyperlink.  The phrase "research reports" linked to a lengthy investigative report in the

---

[3] Pub. L. No. 99-570, § 1803, 100 Stat. 3207, 3207–49 to 3207–50.

[4] Pub. L. No. 110-175, § 3, 121 Stat. 2524, 2525.

1   *Guardian* newspaper that briefly quotes Mr. Lindsay-Poland, but was not written by him

2   and does not appear to describe any research conducted by him.  Siple Decl. ¶ 20.  The

3   phrase "*Los Angeles Times*" linked to an op-ed that he co-authored, which was published

4   in that newspaper on March 12, 2021, shortly before Mr. Lindsay-Poland submitted his

5   FOIA request.  *Id.* ¶ 21.  The phrase "documentary film" linked to a 26-minute video posted

6   on the website vimeo.com.   *Id.* ¶ 22.   And the phrase "web site" linked to

7   https://stopusarmstomexico.org.  *Id.* ¶ 23.  His administrative appeal did not provide any

8   further information.  *See id.*, Ex. D.

9          An "application for news-media status" under 5 U.S.C. § 552(a)(4)(A)(ii) fails

10   when it is "too conclusory," as Mr. Lindsay-Poland's application plainly was.  *Cause of*

11   *Action*, 799 F.3d at 1122.  Even if it might have been enough for Mr. Lindsay-Poland to

12   actually show that he had "published extensively" on issues related to his FOIA request, or

13   written "widely cited research reports," it is not enough for him to merely say so.  *Cf. id.*

14   (discussing an application for news-media status that "cite[d] a large number of articles

15   and [press] releases" and "include[d] descriptions of particular public reports that [the

16   requester] planned to write").

17          "Under well-established case law, fee waiver requests must be . . . based on more

18   than 'conclusory allegations.'"  *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C.

19   Cir. 2003) (quoting *Nat'l Treasury Emps. Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir.

20   1987)).  By the same principle, so too must FOIA requests that would come within

21   Exception C to the Tiahrt Rider, as interpreted in *Center for Investigative Reporting*, which

22   also must show that a requester is a representative of the news media.  Mr. Lindsay-

23   Poland's submission fell well short of this standard.  *See* Siple Decl. ¶ 25.

1       And even if the material cited by hyperlink was constructively before ATF—which

2    it was not, because the agency is entitled to rely on the contents of the FOIA request

3    actually presented to it, without having to consult outside material, *see id.*—the hyperlinked

4    material does not save Mr. Lindsay-Poland's application. *Id.* ¶¶ 26–27. A newspaper

5    investigation that quotes Mr. Lindsay-Poland in passing—but was not written by him and

6    does not appear to describe his research—does not substantiate his claim to have written

7    "widely cited research reports." *See id.* ¶ 20. A single co-authored op-ed piece does not

8    show that Mr. Lindsay-Poland has written "op-eds." *See id.* ¶ 21. A link to a 26-minute

9    film posted six years ago by someone else, which the FOIA request does not describe in

10    any way, does not demonstrate that he has "published extensively." *See id.* ¶ 22. Nor does

11    a link to the home page of a website that does not appear to contain extensive publications

12    by Mr. Lindsay-Poland—especially when that hyperlink is provided without any

13    substantive description of what relevant material the website contains, or where to find it.

14    *See id.* ¶ 23.

15       If Mr. Lindsay-Poland has written "widely cited research reports" and many "op-

16    eds," as his FOIA request asserts, it should have been easy for him to list those publications,

17    either in his initial request or his administrative appeal submitted through counsel. *Cf.*

18    *Cause of Action*, 799 F.3d at 1122 (applicant "cite[d] a large number of articles and [press]

19    releases"). Instead, he presented ATF with only "conclusory allegations." *Rossotti*, 326

20    F.3d at 1312.

21       Judicial review of FOIA claims to be a representative of the news media are

22    "limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). Because that

23    record does not support Mr. Lindsay-Poland's contention, he does not come within

1    Exception C to the Tiahrt Rider, as interpreted by *Center for Investigative Reporting*, 14

2    F.4th at 934–35.

3          **ii.**      **Some of the requested information is not statistical aggregate data.**

4          Finally, even if Mr. Lindsay-Poland had shown that he was a representative of the

5    news media, at least some of his request would fall outside of Exception C to the Tiahrt

6    Rider, because it does not seek "statistical aggregate data." 2012 Tiahrt Rider, 125 Stat. at

7    610. The Ninth Circuit has explained that "statistical" refers to "the collection, analysis,

8    interpretation, and presentation of masses of numerical data." *Id.* at 933 (citation omitted).

9    And "aggregate" means "formed by the collection of units or particles into a body, mass,

10   or amount." *Id.* (citation omitted). Individual units of data therefore are not "aggregate"

11   within the meaning of Exception C.

12         Mr. Lindsay-Poland's request would almost certainly require the production of

13   such individual units of data. In particular, Mr. Lindsay-Poland seeks the number of

14   firearms traced to a federal firearms licensee from each ZIP code, for each covered country

15   and year. Siple Decl. ¶ 30. More than eleven percent of the licensees "authorized to

16   conduct retail firearm sales and . . . thus most likely to be involved in a traced crime gun,"

17   are the only such licensee in their ZIP code. *Id.* ¶ 31. It is therefore quite likely that

18   producing the data requested by Mr. Lindsay-Poland would identify particular federal

19   firearms licensees linked to guns recovered in particular countries and particular years. *Id.*

20   Such granular information is not "statistical aggregate data" within the meaning of

21   Exception C. 2012 Tiahrt Rider, 125 Stat. at 610.

22         Without running the searches that would be required to respond to this FOIA

23   request and analyzing the resultant data—which ATF has not done, because the request is

1  barred by the Tiahrt Rider—it is impossible to know the full extent of the non-statistical,

2  non-aggregate data that they would produce. *See* Siple Decl. ¶ 33. But the release of all

3  such data is barred by that Rider, even if Mr. Lindsay-Poland had shown that he is a

4  representative of the news media.[5]

5  **CONCLUSION**

6      For the reasons set forth above and in ATF's declaration, the agency is entitled to

7  summary judgment affirming its denial of Mr. Lindsay-Poland's FOIA request.

8

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: June 1, 2023

---

[5] If the Court determined that ATF must release all "statistical aggregate data" responsive
to this FOIA request, ATF would search the FTS database and withhold any non-aggregate
data produced by that search.