UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

|  |  |
|---|---|
| JOHN LINDSAY-POLAND, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> *Defendant.* | Case No. 3:22-cv-07663 |

**DECLARATION OF ADAM C. SIPLE,
CHIEF, INFORMATION AND PRIVACY GOVERNANCE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**

1. I am the Chief of the Information and Privacy Governance Division at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Department of Justice ("DOJ"). In this capacity, I am responsible for all records requests made of ATF under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. I am also responsible for all requests referred to ATF from other agencies that have located ATF-originated documents in their records while processing their FOIA and PA requests. As part of these official duties, I oversee the processing of all FOIA and PA records requests, which includes any searches relevant to such requests, and the determination of what records should be disclosed.

2. I am familiar with the procedures followed by the Information and Privacy Governance Division when responding to Plaintiff's FOIA request. I declare that the statements

made herein are based on my personal knowledge, as well as information acquired by review of the administrative file relating to Plaintiff's FOIA request, and knowledge otherwise obtained during the performance of my official duties.

### ATF's Law Enforcement Mission

3.  ATF is a criminal and regulatory enforcement agency and has been a component of the U.S. Department of Justice since 2003. ATF is the federal agency responsible for, among other things, enforcing Federal firearms laws, including the Gun Control Act of 1968 ("Gun Control Act"), 18 U.S.C. §§ 921–930 (2000) (originally enacted as Act of Oct. 22, 1968, Pub. L. No. 90–618, § 1, 82 Stat. 1213). The Gun Control Act established a licensing system for persons or entities referred to as Federal Firearm Licensees ("FFLs"), who are engaged in manufacturing, importing, dealing, and collecting firearms and are regulated by ATF. ATF enforces the licensing provisions of the Gun Control Act, which, among other things, regulates the interstate movement of firearms.

### Firearms Tracing

4.  Pursuant to the Gun Control Act, the U.S. Attorney General is authorized to administer firearms tracing. The Attorney General delegated to ATF the authority to trace firearms. To carry out its firearms tracing functions, ATF maintains the Firearms Tracing System ("FTS"), which is a law enforcement information database. The FTS is maintained at the National Tracing Center ("NTC"). In response to requests from law enforcement, the NTC provides ATF field agents and other law enforcement agencies with Firearms Trace Result Reports commonly referred to as "trace data" as well as investigative leads obtained from the traced firearm.

5.  "Tracing" a firearm is the systematic tracking of a recovered firearm from its manufacturer or importer, through its subsequent introduction into the distribution chain (wholesaler/retailer), to identify an unlicensed purchaser. A firearm trace begins when the NTC receives a request from a Federal, State, local, or foreign law enforcement agency that has

recovered a firearm or suspects that a certain firearm has been used in crime. The ATF also requests traces in connection with the investigations that it conducts. Firearms for which traces are requested typically have been recovered at the scene of a crime or from the possession of a suspect, felon, or other person who is prohibited from owning the firearm or may have been purchased by law enforcement in an undercover capacity.

6. The "trace data" is maintained in the FTS and includes the 8-digit identification number of the FFLs involved in the sale or transfer of the firearm, along with any information regarding the retail purchaser of the firearm. Law enforcement agencies, including ATF, may use the "trace data" to link a suspect to a firearm-related criminal investigation, to identify any potential firearms traffickers, and to detect patterns in the sources and kinds of firearms that are used in a crime.

## FOIA Exemption 3 and the Tiahrt Rider

7. FOIA Exemption 3 permits the withholding of information prohibited from disclosure by another statute only if one of two disjunctive requirements are met: the statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). In 2009, Congress provided that Exemption 3 would only apply to later-enacted statutes that specifically cited the exemption. *Id.* § 552(b)(3)(B).

8. Beginning in 2003, in a series of "Tiahrt Riders," Congress placed restrictions on ATF's disclosure of certain Gun Control Act-related information. The most recent iteration of these restrictions was included in the 2012 Appropriations Act. *See* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011) (codified at 18 U.S.C. § 923 note) (hereinafter "2012 Tiahrt Rider"). In pertinent part, the 2012 Tiahrt Rider states:

> [D]uring the current fiscal year and *in each fiscal year thereafter*, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System [("FTS")] database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by [Federal Firearms] [L]icensees pursuant to Section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section . . . . and all such data shall be immune from legal process . . . except that this proviso shall not be construed to prevent: . . . (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

*Id*. (emphasis added).

9. Although the 2012 Tiahrt Rider does not specifically cite FOIA Exemption 3, ATF understands it to bar the release of FTS data to FOIA requesters, for substantially the reasons set forth in *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 984 F.3d 30 (2d Cir. 2020).

10. ATF understands Exception C to the 2012 Tiahrt Rider to "allow[] the ATF, at its own initiative, to release statistical aggregate data regarding [firearms traffickers and trafficking channels, or] firearms misuse, felons, and trafficking investigations to the public," but not to authorize the disclosure of such information to FOIA requesters. *Id*. at 44. However, the Ninth Circuit rejected that understanding in *Center for Investigative Reporting v. U.S. Department of Justice*, 14 F.4th 916, 933–36 (9th Cir. 2021). Outside of the Ninth Circuit, ATF adheres to its own interpretation of Exception C, which was endorsed by the Second Circuit in *Everytown*. But ATF acknowledges that the interpretation announced in *Center for Investigative Reporting* is binding precedent within the Ninth Circuit.

### Plaintiff's FOIA Request

11. On March 22, 2021, Plaintiff John Lindsay-Poland submitted a FOIA request to ATF, via an online form at FOIA.GOV. A copy of the request is attached hereto as Exhibit A.

Plaintiff's FOIA request seeks "records based on a database query containing data on firearms recovered in Mexico, Guatemala, Honduras, and El Salvador, and traced by the ATF, since Dec. 31, 2014."

12. Although the request is not perfectly clear, ATF understands Plaintiff to seek the following data:

- The number of traced firearms recovered in each of the four countries, in each year.

- For each country, and each year, the number of firearms recovered and traced to a federal firearms licensee from each: a) state, b) county, and c) ZIP code.

- For each country, and each year, the number of firearms recovered and traced by a) type of firearm, b) caliber of firearm, and c) manufacturer.

- The number of buyers to which recovered firearms were traced by a) year, b) country of recovery, and c) county of purchase.

- For each country, and each year, the number of federal firearms licensees to which recovered firearms were traced by a) state of purchase, b) county of purchase, c) type of firearm, and d) caliber of firearm.

### ATF's Response to Plaintiff's FOIA Request

13. ATF acknowledged Plaintiff's FOIA request on May 17, 2021, and assigned the request number 2021-0528 for tracking purposes. A copy of that acknowledgement letter is attached hereto as Exhibit B.

14. ATF issued its final response to Plaintiff's FOIA request by letter dated December 14, 2021. A copy of that letter is attached hereto as Exhibit C. ATF determined that it is required by law to withhold the requested records.

15.     As the letter explains, Plaintiff sought records from the FTS database, and the release of such records is prohibited by an appropriations restriction. The letter incorrectly states that "[s]ome" of the information requested falls within the appropriations restriction. In fact, all the information requested by Plaintiff is contained within the FTS database, and therefore falls within the appropriations restriction.

### Plaintiff's Appeal to OIP

16.     On March 14, 2022, Plaintiff administratively appealed ATF's final response to the Department of Justice's Office of Information Policy ("OIP"). A copy of that letter is attached hereto as Exhibit D.

17.     By letter dated, October 7, 2022, OIP affirmed ATF's decision. A copy of the letter is attached hereto as Exhibit E.

### Information Withheld Pursuant to the Tiahrt Rider

18.     All the information requested by Plaintiff resides in the FTS database. For the reasons explained above, the 2012 Tiahrt Rider bars the release of all such information to FOIA requesters. ATF has therefore withheld all records responsive to Plaintiff's FOIA request, as required by the 2012 Tiahrt Rider.

### Plaintiff Did Not Establish That He is a News Media Representative

19.     In his FOIA request, Plaintiff included the following statement: "I make this request as a representative of the news media. I have published extensively on issues related to firearms trafficking in the Americas, including widely cited **research reports**, op-eds in publications such as the ***Los Angeles Times***, a **documentary film**, and a **web site** dedicated to the issue." Each bold, underlined phrase contained a hyperlink.

20. The phrase "research reports" included the hyperlink https://www.theguardian.com/world/2020/dec/09/mexico-cartel-project-weapons-import-trafficking, which points to an article entitled "'They're culpable': the countries supplying the guns that kill Mexico's journalists," published in the *Guardian* on December 11, 2020. The authors are listed as Phineas Rueckert and Nina Lakhani. The article briefly quotes Plaintiff, but does not list him as an author and does not appear to describe any research conducted by him.

21. The phrase "*Los Angeles Times*" included the hyperlink https://www.latimes.com/opinion/story/2021-03-12/gun-exports-us-biden-trump, which points to an op-ed entitled "Trump made it easier to export U.S. guns. Biden must reverse these dangerous policies," published in the *Los Angeles Times* on March 12, 2021. The op-ed lists Plaintiff as a co-author.

22. The phrase "documentary film" included the hyperlink https://vimeo.com/214922986, which points to an approximately 26-minute video entitled "Where the Guns Go, U.S. Policy and Human Rights in Mexico." The video indicates that it was posted six years ago by Abad Tecoanapa. The credits, which appear at the end of the video, indicate that the video was co-directed by Plaintiff.

23. The phrase "web site" included this hyperlink: https://stopusarmstomexico.org. This web page does not appear to contain extensive publications by Plaintiff.

24. Plaintiff's FOIA request did not demonstrate that he is a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii), which the Ninth Circuit has suggested should guide ATF's application of Exception C to the 2012 Tiahrt Rider. *See Ctr. for Investigative Reporting*, 14 F.4th at 934 n.14.

25. Plaintiff offered a single sentence in support of his claim that he is a representative of the news media. That sentence is quoted above in paragraph 19. It asserts that

Plaintiff has "published extensively on issues related to firearms trafficking in the Americas," but does not support that assertion. This single, conclusory sentence does not demonstrate that Plaintiff is a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii). ATF rests its determination on the contents of the FOIA request presented to the agency.

26. Even if ATF were to consider the hyperlinked material referenced in that request, it would still conclude that Plaintiff has not demonstrated that he is a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii).

27. The hyperlinked material does not support Plaintiff's claim that he has "published extensively on issues related to firearms trafficking in the Americas." The phrase "widely cited **research reports**" links to a single newspaper article that was not written by Plaintiff and does not appear to describe any research conducted by him. *See* paragraph 20. The phrase "op-eds in publications such as the ***Los Angeles Times***" also links to a single article. *See* paragraph 21. The 26-minute video to which the phrase "documentary film" points does not demonstrate extensive publications. *See* paragraph 22. And the phrase "web site" links to a page that does not appear to contain extensive publications by Plaintiff. *See* paragraph 23. The hyperlinked material does not support Plaintiff's characterizations of it, nor demonstrate that he is a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii).

### Plaintiff's Request Will Produce Non-Aggregate Results

28. As relevant here, Exception C to the 2012 Tiahrt Rider applies to "statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." 125 Stat. at 610.

29. The Ninth Circuit has held that "aggregate" means "formed by the collection of units or particles into a body, mass, or amount." *Center for Investigative Reporting*, 14 F.4th at

933 (quotation omitted). It follows that information is not aggregate if it is not formed by the collection of units or particles. Accordingly, the information requested in this case is not aggregate if it identifies individual pieces of information from the FTS database, such as the identity of an individual or FFL.

30. Plaintiff requested, *inter alia*, the "[n]umber of firearms traced, and with the following disaggregations, for each country where firearm was recovered and each year: . . . zip code of FFL where firearm was purchased." IPG staff reviewed ATF's list of FFLs to determine whether the FFL's zip code would reveal the identities of individual FFLs.

31. ATF publishes on its website a monthly list of all FFLs. *See* https://www.atf.gov/firearms/listing-federal-firearms-licensees. As of June 2023, this includes monthly reports dating back to January 2014. Included in each of the publicly released data sets is the FFL's zip code. As of May 31, 2023, there were 78,593 licensees with a license type of 1, 2, or 7. The holders of any of these three license types are authorized to conduct retail firearm sales and are thus most likely to be involved in a traced crime gun. Of the 78,593 FFLs with a license type of 1, 2, or 7, 13,544 FFLs (or approximately 17 percent of all FFLs with these license types) associate with a zip code in which only one (8,818) or two (4,726) FFLs have a place of business. Accordingly, by identifying the zip codes to which recovered firearms were traced, there is a statistically significant chance that individual FFLs will be revealed. As such, this data point cannot be considered aggregate data.

32. Public release of FFL-specific data would create substantial risks that ongoing Federal, state, and local law enforcement investigations would be prematurely disclosed and could thereby jeopardize those investigations and potentially endanger undercover agents, and third parties, such as witnesses and confidential sources. *See* H.R. 108-567 (Congress expressed

"great concern" that release of trace data "would endanger law enforcement and homeland security, and violate the privacy of innocent citizens and businesses").

33. Given the granularity of Plaintiff's FOIA Request, it is likely that additional data points extracted from the FTS database in response to Plaintiff's requests would not constitute statistical aggregate data as interpreted by the Ninth Circuit.

\* \* \* \* \*

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of June 2023.

Adam C. Siple
Chief, Information and Privacy Governance Division