1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
Heather S. Nyong'o (SBN 222202)
(415) 796-4400
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Elizabeth Vicens (Admitted *pro hac vice*)
Andrew Khanarian (Admitted *pro hac vice*)
One Liberty Plaza
New York, NY 10006

**GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE**
David Pucino (*Pro hac vice* pending)
William T. Clark (*Pro hac vice* forthcoming)
[*additional addresses on signature page*]

*Attorneys for Plaintiff John Lindsay-Poland*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN LINDSAY-POLAND, | Case No. 3:22-cv-07663-EMC |
| Plaintiff, | **OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS** |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | Date: October 19, 2023, 1:30 PM
Location: Via Zoom |
| Defendants. | Judge: Hon. Edward M. Chen |

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

    **PLEASE TAKE NOTICE** that on October 19, 2023, at 1:30 PM, or at such other date as may

4

be ordered, at the courtroom of the Honorable Edward M. Chen, Plaintiff John Lindsay-Poland will and

5

hereby does move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary

6

judgment against Defendants United States Department of Justice and Bureau of Alcohol, Tobacco,

7

Firearms and Explosives (together, the "Government") on the sole claim, violation of the Freedom of

8

Information Act, 5 U.S.C. § 552(a)(3)(A).  Plaintiff seeks summary judgment on the grounds that there

9

is no issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law.   The

10

motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities,

11

the Declaration of John Lindsay-Poland, the arguments of counsel, and all other matters properly

12

considered by the Court.

13

**REQUESTED RELIEF**

14

    Plaintiff requests that the Court grant Plaintiff's Cross-Motion for Summary Judgment and

15

order the relief proposed in the accompanying [Proposed] Order and Judgment.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3

4

STATEMENT OF ISSUES ......................................................................................1

5

PRELIMINARY STATEMENT ...............................................................................1

6

STATEMENT OF FACTS.......................................................................................4

7

ARGUMENT ...........................................................................................................6

8        I.       The 2012 Tiahrt Rider Is Not A Valid Basis To Deny Mr.
Lindsay-Poland Access To The Requested Records Because It

9                Does Not Satisfy Exemption 3's Express Citation Requirement..............6

10      II.     Mr. Lindsay-Poland's Request For Statistical Aggregate Trace
Data Falls Within the Aggregate Data Exception To The 2012

11                Tiahrt Rider Under Binding Ninth Circuit Law ......................................12

12      III.    The 2012 Tiahrt Rider Is Not A Withholding Statute With
Respect To Statistical Aggregate Data ....................................................16

13

CONCLUSION ......................................................................................................17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:22-CV-07663-EMC**

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Civil Liberties Union Found. v. U.S. Dep't of Justice*, 418 F.Supp.3d 466 (N.D. Cal. 2019) 15

*Am. Jewish Cong. v. Kreps*, 574 F.2d 624 (D.C. Cir. 1978) ...................................................... 17

*Am. Small Bus. League v. U.S. Small Bus. Admin.*, 2022 WL 2047557, at *13 (N.D. Cal. June 7, 2022) ........................................................................................................................................... 13

*Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102 (1974) ............................................... 9

*Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084 (9th Cir. 2002) ........................................ 6, 15

*Cause of Action v. FTC*, 799 F.3d 1108 (D.C. Cir. 2015) .......................................................... 13

*Center for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916 (9th Cir. 2021) ..... *passim*

*Church of Scientology of California v. U.S. Postal Serv.*, 633 F.2d 1327 (9th Cir. 1980) .. 3, 17, 18

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ........................ 7, 17

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ................................................ 12

*Dorsey v. United States*, 567 U.S. 260 (2012) ..................................................................... 10, 11

*Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) ............................................................... 8, 9, 11

*Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30 (2d Cir. 2020) .......................... 5, 6

*Great Northern Ry. Co. v. United States*, 208 U.S. 452 (1908) ................................................. 10

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124 (2001) ................................ 8

*Lockhart v. United States*, 546 U.S. 142 (2005) ....................................................................... 11

*Louis v. U.S. Dep't of Labor*, 419 F.3d 970 (9th Cir. 2005) ...................................................... 13

*Maine Cmty. Health Options v. United States*, 140 S.Ct. 1308 (2020) ......................................... 8

*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) ........................................ 8

*N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .................................................... 6

*Powell v. U.S. Dep't. of Justice*, 584 F. Supp. 1508 (N.D. Cal. 1984) ...................................... 13

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ............................................................ 8

*Russello v. United States*, 464 U.S. 16 (1983) .......................................................................... 14

*Salinas v. U.S. R.R. Ret. Bd.*, 141 S.Ct. 691 (2021) .................................................................. 14

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:22-CV-07663-EMC**

ii

*U.S. Dep't of Justice v. Julian*, 486 U.S. 1 (1988) ........................................................3, 6

*United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019) .............................................. 10

**Statutes**

FAA Modernization and Reform Act of 2012, Pub. L. No. 112–95, 126 Stat. 11 (2012).............. 8

Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112–144, 126 Stat. 993

    (2012)........................................................................................................... 7

Freedom of Information Act, 5 U.S.C. § 552 ..................................................................*passim*

Jumpstart Our Business Startups Act, Pub. L. No. 112–106, 126 Stat. 306 (2012)...................... 7

Moving Ahead For Progress In The 21st Century Act, Pub. L. No. 112–141, 126 Stat 405........... 7

National Defense Authorization Act For Fiscal Year 2012, Pub. L. No. 112–81, 125 Stat. 1298

    (2011)........................................................................................................... 8

Tiahrt Rider, Pub. L. No. 112–55, 125 Stat. 552 (2012).......................................................*passim*

**Other Authorities**

155 Cong. Rec. S3164 (March 17, 2009)...................................................................... 6

DEP'T OF JUSTICE, *Congress Passes Amendment to Exemption 3 of the FOIA* (Mar. 10, 2010),

    https://www.justice.gov/oip/blog/congress-passes-amendment-exemption-3-foia.................. 7

**Regulations**

6 C.F.R. § 5.11 .............................................................................................. 5

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:22-CV-07663-EMC**

iii

### STATEMENT OF ISSUES

1.      Whether the 2012 Tiahrt Rider fails to satisfy the Freedom of Information of Act's requirement that any withholding statute expressly cite to the Freedom of Information Act, and thus cannot serve as a basis for withholding the records sought by Mr. Lindsay-Poland.

2.      Whether Mr. Lindsay-Poland's request for aggregate trace data in his capacity as a member of the media falls within the 2012 Tiahrt Rider's exception permitting the release of statistical aggregate data under binding Ninth Circuit law.

3.      Whether the 2012 Tiahrt Rider, which grants ATF broad discretion to release statistical aggregate data, fails to satisfy the Freedom of Information of Act's requirement that any withholding provision mandate non-disclosure of the records sought.

### PRELIMINARY STATEMENT

This Court should grant summary judgment in Mr. Lindsay-Poland's favor because binding Ninth Circuit precedent requires the Government to produce the records at issue in this case.

❖  ❖  ❖

Mr. Lindsay-Poland is a member of the media who seeks to inform the public about the transnational gun violence currently plaguing Mexico and Central America.  Mr. Lindsay-Poland requested statistical aggregate data on the illegal transfer of firearms to Mexico and Central America (the "Requested Records") to inform his upcoming reporting on the subject.  The Government denied Mr. Lindsay-Poland access to the Requested Records and Mr. Lindsay-Poland brought this action to enforce his right to access the Requested Records under the Freedom of Information Act.

The Freedom of Information Act prohibits the Government from denying Mr. Lindsay-Poland access to government records unless the Government can satisfy one of nine Congressionally-created exemptions.  *See generally* 5 U.S.C. § 552(b)(1)–(9).  This case solely involves Exemption 3, which permits the Government to withhold records on the basis of certain statutes ("withholding statutes") that satisfy particular requirements.  *See* 5 U.S.C. § 552 (b)(3).  "Exemption 3 relieves an agency of its obligation to disclose material 'specifically exempted from disclosure by statute,' but only if that statute (1) 'requires that the matters be withheld from the

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:22-CV-07663-EMC**

1

public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld,' **and** (2) 'if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.'"[1]  *Center for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 926 (9th Cir. 2021) (quoting 5 U.S.C. § 552(b)(3)) (emphasis supplied).  In its Motion for Summary Judgment, the Government solely argues (at 8–19)[2] that it can withhold the Requested Records because the 2012 Tiahrt Rider qualifies as a withholding statute and prohibits the release of the Requested Records.

The Government's purported basis for denying Mr. Lindsay-Poland access to the Requested Records fails for three independent reasons.

*First*, the 2012 Tiahrt Rider does not qualify as a withholding statute because it does not satisfy Exemption 3's Express Citation Requirement.  The Express Citation Requirement requires that any statute enacted after October 28, 2009 expressly cite to Exemption 3 in order to qualify as a withholding statute.  *Center for Investigative Reporting*, 14 F.4th at 926.  The 2012 Tiahrt Rider plainly does not cite Exemption 3.  Thus, the Government cannot withhold the Requested Records on the basis of Exemption 3.

*Second*, the Requested Records fall within the 2012 Tiahrt Rider's exception for the release of "statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations."  *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10. And under binding Ninth Circuit precedent, the 2012 Tiahrt Rider does not prohibit the release of statistical aggregate data to representatives of the public such as members of the media.  *Center for Investigative Reporting*, 14 F.4th at 934–35.  Because Mr. Lindsay-Poland established that he is a member of the media in both his request for the Requested Records (the "FOIA Request") and his Declaration, the Government is allowed to release the Requested Records and thus must make them available to Mr. Lindsay-Poland under the Freedom of Information Act.

---

[1]    We refer to the first component of Exemption 3 as the "Withholding Requirement" and the second component of Exemption 3 as the "Express Citation Requirement."

[2]    Parenthetical citations refer to the Memorandum in Support of Defendants' Motion for Summary Judgment, ECF 32–1.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

2

*Third*, the 2012 Tiahrt Rider is not even a withholding statute with respect to statistical aggregate data because ATF has boundless discretion to release such data to the public. Congress has made clear that a statute cannot qualify as a withholding statute for purposes of Exemption 3 if the statute merely provides "general benchmarks for secrecy" and does not mandate nondisclosure. *See Church of Scientology of California v. U.S. Postal Serv.*, 633 F.2d 1327, 1330 (9th Cir. 1980). The question of whether a statute grants sufficient agency discretion to remove matters from the scope of Exemption 3 is answered on a provision-by-provision basis. *See U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 9 (1988) (finding information in presentence reports beyond "confidential sources, diagnostic opinions, and other information that may cause harm to the defendant or to third parties" to not qualify under Exemption 3). The statistical aggregate data provision does not "require[] that [statistical aggregate data] be withheld from the public" and does not "establish[] particular criteria for withholding [statistical aggregate data] or refers to particular types of [statistical aggregate data] to be withheld." *See* 5 U.S.C. § 552(b)(3)). Because Congress determined that statistical aggregate data need not stay within the four walls of ATF, such data is not exempt from disclosure under Exemption 3.

The Government critically concedes (at 14 n.2) that *Center for Investigative Reporting* binds this Court, and that the 2012 Tiahrt Rider does not bar ATF from releasing statistical aggregate trace data to members of the media. The Government instead argues—for the first time since Mr. Lindsay-Poland submitted his FOIA Request—that this binding precedent does not apply here because Mr. Lindsay-Poland is not a member of the media and did not request statistical aggregate data.[3] The Government is wrong on both fronts. The indisputable facts set forth in Mr. Lindsay-Poland's Declaration establish that Mr. Lindsay-Poland is a member of the media who gathers information and disseminates it to the public at large. Moreover, the Requested Records seek statistical aggregate data because every request seeks summary data reflecting multiple data points. Therefore, under binding Ninth Circuit precedent, the Government cannot legally withhold

---

[3]     The Government has never previously raised Mr. Lindsay-Poland's status as a member of the media in its rejection of his FOIA Request, its denial of his administrative appeal, or even in its Answer to his Complaint in this action, let alone as a basis for denying his FOIA Request. *See infra* at 4–6.

**Opposition to Defendants' Motion for Summary Judgment**
**& Plaintiff's Cross-Motion for Summary Judgment**
**Case No. 3:22-cv-07663-EMC**

3

the Requested Records.

## STATEMENT OF FACTS

***Mr. Lindsay-Poland is a member of the media who helps the public understand the illegal flow of firearms across America's southern border.***

Mr. Lindsay-Poland is a journalist, researcher and analyst with over three decades of experience covering Mexico and Central America.  Decl. of John Lindsay-Poland ("LP Decl.") ¶¶ 3–4.  Mr. Lindsay-Poland currently serves as the Coordinator of Stop U.S. Arms to Mexico.  LP Decl. ¶ 3.  He previously was an editor and staff writer for Panamá Update (1992–1999), Puerto Rico Update (2000–2005), Colombia Update (2006–2011) and Latin America Update (2011–2014). LP Decl. ¶ 4.  Mr. Lindsay-Poland regularly travels to the region and analyzes open-source intelligence sources to better understand security and human rights issues affecting the region.  LP Decl. ¶ 5.  Over the course of his career, Mr. Lindsay-Poland has published over 75 articles, reports and press releases on the region based on his fact-gathering. LP Decl. ¶ 9.  He has also been quoted in several leading publications. LP Decl. ¶ 10.  His articles have appeared in outlets such as *The L.A. Times* and he has been quoted in outlets such as *Reuters*.  LP Decl. ¶¶ 9d, 10a.  His reporting and analyses focus on transnational gun violence caused by the flow of firearms from the United States to Mexico and Central America.  LP Decl. ¶¶ 3–8.

***Mr. Lindsay-Poland requested that ATF provide aggregate trace data pertaining to the illegal flow of firearms to Mexico and Central America for his upcoming reporting.***

On March 22, 2021, Mr. Lindsay-Poland requested aggregate statistical data on traced firearms recovered in Mexico and Central America (the "FOIA Request").  Siple Decl. Ex. A, ECF 33–1.  In his FOIA Request, Mr. Lindsay-Poland put the Government on notice that he was making the request "as a representative of the news media" and cited *Center for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916 (9th Cir. 2021).  *See* Siple Decl. Ex. A, ECF 33–1.  He also supplied the Government with examples of his prior reporting, citing his prior research reports, op-eds, films and website.  Siple Decl. Ex. A, ECF 33–1.  Mr. Lindsay-Poland also requested a fee waiver because the Requested Records will contribute significantly to the public's understanding of the operations or activities of the government.  Siple Decl. Ex. A, ECF 33–1 (citing 5 U.S.C. §

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

4

1 | 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)).

2 |      Consistent with his past practice, Mr. Lindsay-Poland intends to use the Requested Records

3 | for his upcoming reporting and a collaborative study on the flow of illegal firearms to Mexico and

4 | Central America. LP Decl. ¶ 6.   Mr. Lindsay-Poland has relied heavily on similar records in

5 | producing his prior reporting, making aggregate trace data available to the public on numerous

6 | occasions throughout his career.  LP Decl. ¶ 3, 7.  For example, his February 17, 2022 report in

7 | *Univision* on violence in Mexico utilized firearm trace data.  LP Decl. ¶ 9a & Ex. A.  Similarly, his

8 | December 17, 2018 *Arizona Star* op-ed similarly utilized ATF trace data.  LP Decl. ¶ 9f & Ex. F.

9 | ***The Government applied out-of-circuit case law to deny Mr. Lindsay-Poland's request.***

10 |      On December 14, 2021, ATF denied Mr. Lindsay-Poland access to the Requested Records.

11 | Siple Decl. Ex. C, ECF 33–3.  The Government stated that it denied Mr. Lindsay-Poland access to

12 | the Requested Records on the basis of *Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d

13 | 30 (2d Cir. 2020).  Siple Decl. Ex. C, ECF 33–3.  However, the Government now acknowledges

14 | that *Everytown* is not binding in the Ninth Circuit and that *Center for Investigative Reporting* binds

15 | this court.  Siple Decl. ¶ 10.[4]

16 |      In denying Mr. Lindsay-Poland's FOIA Request, the Government never challenged Mr.

17 | Lindsay-Poland's status as a member of the media.  *See* Siple Decl. Ex. C, ECF 33–3.  The

18 | Government also did not make a determination in response to Mr. Lindsay-Poland's fee waiver

19 | request.

20 | ***Mr. Lindsay-Poland brought this action to compel disclosure of the Requested Records after the***

21 | ***Government denied his administrative appeal.***

22 |      After ATF denied his FOIA Request, Mr. Lindsay-Poland timely appealed the

23 | Government's denial on March 14, 2022, once again citing to *Center for Investigative Reporting v.*

24 |

---

25 | [4]    The Siple Declaration contains multiple conclusions and statements of law.  *See* Siple Decl.
26 | ¶¶ 7–10, 24, 28, 29.  But under this Court's rules, "[a]n affidavit or declaration may contain only facts . . . and must avoid conclusions and argument."  L. R.  7-5.  Mr. Lindsay-Poland therefore objects to the inclusion of these statements in the Siple Declaration, except to the extent these
27 | statements solely reflect Mr. Siple's ***understanding*** of the law.  For the avoidance of doubt, Mr. Lindsay-Poland does not concede the validity of any such conclusions or statements of law in the
28 | Siple Declaration.

---

**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**CASE NO. 3:22-CV-07663-EMC**

5

1   *U.S. Dep't of Justice*, 14 F.4th 916 (9th Cir. 2021).  *See* Siple Decl. Ex. D, ECF 33–4.  The

2   Government denied his appeal, citing again solely to *Everytown for Gun Safety Support Fund v.*

3   *ATF*, 984 F.3d 30 (2d Cir. 2020) and again not questioning Mr. Lindsay-Poland's status as a

4   member of the media.  Siple Decl. Ex. E, ECF 33–5.  Mr. Lindsay-Poland then sued to challenge

5   the Government's decision to withhold the Requested Records.  Compl., ECF 1.

6                                    **ARGUMENT**

7   **I.    The 2012 Tiahrt Rider Is Not A Valid Basis To Deny Mr. Lindsay-Poland Access To**

8   **The Requested Records Because It Does Not Satisfy Exemption 3's Express Citation**

9   **Requirement.**

10          The Freedom of Information Act grants the public a legally enforceable right to access

11  government records, subject to nine exemptions.  *See generally* 5 U.S.C. § 552(b)(1)–(9).  "Because

12  FOIA's purpose is to encourage disclosure, its exemptions are to be narrowly construed."  *Carter*

13  *v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002) (citing *Julian*, 486 U.S. at 8).  If

14  a member of the public requests information that does not fall within any of the nine exemptions,

15  the agency must release the information to the public.  *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437

16  U.S. 214, 221 (1978).

17          The Government solely invokes Exemption 3 as a purported basis for withholding the

18  Requested Records.  As relevant here, "Exemption 3 relieves an agency of its obligation to disclose

19  material specifically exempted from disclosure by statute, but only if that statute . . .  specifically

20  cites to [Exemption 3]."  *Center for Investigative Reporting*, 14 F.4th at 926.[5]  Congress added

21  Exemption 3's Express Citation Requirement because it thought "statutory exemptions should be

22  clear and unambiguous, and vigorously debated before they are enacted into law."  155 Cong. Rec.

23  S3164, S3175–S3176 (March 17, 2009) (statement of Sen. Leahy on behalf of himself and Sen.

24

---

[5]      While the express citation requirement only applies to statutes enacted after 2009, the
25  Government solely invokes (at 1) the 2012 Tiahrt Rider as a purported withholding statute.  It is
    beyond dispute that the 2012 Tiahrt Rider wholly replaced and repealed earlier versions of the 2012
26  Tiahrt Rider.  *See Center for Investigative Reporting*, 14 F.4th at 927 ("We conclude that the 2012
    [Tiahrt] Rider—which enacted the language of the 2010 Rider without any alteration—is the only
27  operative Rider."); *accord Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 37 (2d
    Cir. 2020) (holding the 2012 Tiahrt Rider impliedly repealed earlier-enacted versions of the 2012
28  Tiahrt Rider).

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

6

Cornyn).  Accordingly, the 2012 Tiahrt Rider can only qualify as a withholding statute if Congress explicitly cited to Exemption 3 in the text of the 2012 Tiahrt Rider.[6]  Congress declined to do so. *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10.  Therefore, the Government cannot use Exemption 3 to withhold the Requested Records.

The Government's argument (at 9) that the Freedom of Information Act impermissibly entrenches Congress by attempting to bind future Congresses is unavailing.  The Freedom of Information Act, as amended by the Open FOIA Act of 2009, does not impair Congress's ability to enact future legislation.  In enacting the Open FOIA Act of 2009, Congress merely redefined the universe of statutes that satisfy Exemption 3, something that Congress has done before.  For example, Congress amended Exemption 3 in 1976 "to eliminate from Exemption 3 those statutes that granted administrative agencies such [broad] discretion with respect to the disclosure or nondisclosure of material within their possession" following the Supreme Court's decision in *Administrator, FAA v. Robertson*, 422 U.S. 255 (1975). *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 121 n.18 (1980).  Congress's bipartisan addition of the Express Citation Requirement in 2009 was just another effort by Congress to refine the contours of Exemption 3.

The Freedom of Information Act also does not present any of the Supreme Court's concerns regarding entrenchment.  Congress could have easily enacted the 2012 Tiahrt Rider as a withholding statute simply by citing to Exemption 3, as Congress has done on several occasions before.[7]  Congress also remains free to amend or repeal Exemption 3's Express Citation

---

[6]   At least in its public statements, the Government appears to share this plain reading of Exemption 3.  *See* DEP'T OF JUSTICE, *Congress Passes Amendment to Exemption 3 of the FOIA* (Mar. 10, 2010), https://www.justice.gov/oip/blog/congress-passes-amendment-exemption-3-foia ("If enacted after October 28, 2009, the statute must meet one additional requirement; it must specifically cite to Exemption 3 in order to qualify as a withholding statute.").

[7]   *See, e.g.,* Jumpstart Our Business Startups Act, Pub. L. No. 112–106, § 106, 126 Stat. 306, 312 (2012) (amending 15 U.S.C. § 77f to shield certain regulatory disclosures by small businesses by adding statement that "[f]or purposes of section 552 of title 5, United States Code, this subsection shall be considered a statute described in subsection (b)(3)(B) of such section 552"); Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112–144, § 710, 126 Stat. 993, 1070 (2012) (amending 21 U.S.C. § 379, concerning confidentiality of certain information provided to the FDA, to add similar language); Moving Ahead For Progress In The 21st Century Act, Pub. L. No. 112–141, § 40231, 126 Stat 405, 854 (2012) (amending 29 U.S.C. § 1302, concerning minutes of Pension Benefit Guaranty Corporation meetings, to add similar language);

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

7

1   Requirement.  But nothing on the face of the 2012 Tiahrt Rider amends or repeals any provision of

2   the Freedom of Information Act.  *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10.

3        The only way the 2012 Tiahrt Rider can override the Freedom of Information Act is by

4   meeting the high bar for an implied repeal.  *See Maine Cmty. Health Options v. United States*, 140

5   S.Ct. 1308, 1323 (2020) (stating that "repeals by implication are not favored" and are a "rarity")

6   (quotations and citations omitted).  "[T]he only permissible justification for a repeal by implication

7   is when the earlier and later statutes are irreconcilable." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred*

8   *Int'l, Inc.*, 534 U.S. 124, 141–42 (2001).  Even where an irreconcilable conflict exists between two

9   statutes, Congress's intent to displace the earlier statute "must be clear and manifest."  *Epic Sys.*

10  *Corp. v. Lewis*, 138 S.Ct. 1612, 1624 (2018) (quotations omitted).  The bar is even higher in the

11  context of the 2012 Tiahrt Rider because the "[Supreme] Court's aversion to implied repeals is

12  especially strong in the appropriations context."  *Maine Cmty. Health Options*, 140 S.Ct. at 1323

13  (quotations omitted).[8]

14        There is no irreconcilable conflict between the 2012 Tiahrt Rider and the Freedom of

15  Information Act because the two enactments comfortably coexist.  A court will "give effect to two

16  statutes that overlap, so long as each reaches some distinct cases." *J.E.M. Ag Supply, Inc.*, 534 U.S.

17  at 144; *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) ("It is not enough to

18  show that the two statutes produce differing results when applied to the same factual situation, for

19  that no more than states the problem.").  Here, the Freedom of Information Act governs the contours

20

21  FAA Modernization and Reform Act of 2012, Pub. L. No. 112–95, § 310, 126 Stat. 11, 64–65

22  (2012) (amending 49 U.S.C § 44703 and enacting 49 U.S.C. § 44735, concerning disclosure of
    various forms of aviation safety data, and including specific references to 5 U.S.C. § 552(b)(3) in
    both provisions); National Defense Authorization Act For Fiscal Year 2012, Pub. L. No. 112–81,

23  §§ 1082 & 1091, 125 Stat. 1298, 1601, 1604 (2011) (enacting 10 U.S.C. §§ 2254a and 130e,
    concerning nondisclosure of critical infrastructure security information and military flight

24  operations data, and adding citation to "section 552(b)(3) of title 5" to both provisions); *see also*
    *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) ("[W]e presume that

25  Congress is aware of existing law when it passes legislation.") (quotations omitted).

26  [8]     While the Ninth Circuit did not ultimately reach the government's claim of entrenchment
    in *Center for Investigative Reporting*, it did note that the Government's entrenchment argument

27  requires identifying an "irreconcilable conflict" between the 2012 Tiahrt Rider and the Freedom of
    Information Act as well as overcoming "the Supreme Court's 'especially strong' aversion to

28  implied repeals of standalone laws through appropriation riders."  *Center for Investigative*
    *Reporting*, 14 F.4th at 945 n.7 (quoting *Maine Cmty. Health Options*, 140 S.Ct. at 1323).

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

8

of Exemption 3 while the 2012 Tiahrt Rider—which does not mention the Freedom of Information Act once—still governs the release of trace data outside of the FOIA context.  *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10 (expressly addressing disclosure of firearm trace data in the context of discovery and subpoenas, but not mentioning the Freedom of Information Act).  The Supreme Court's recent decision in *Epic Systems* reinforces the principle that there is no irreconcilable conflict where the later statute does not clearly and manifestly address the precise subject of the earlier statute.  *Epic Systems* addressed a purported conflict between the National Labor Relation Act's protection of "concerted activities" and the Federal Arbitration Act's mandatory enforcement of class action waivers, which the employees claimed was a prohibition on concerted activity.  *Epic Sys. Corp.*, 138 S.Ct. at 1617.  The Supreme Court refused to find an irreconcilable conflict between the statutes, reasoning that the NLRA's protection of "concerted activities" did not show a "clear and manifest" intent to cover the subject matter of the FAA.  *Id*. at 1624.  The 2012 Tiahrt Rider—which fails to mention the Freedom of Information Act—similarly does not express a "clear and manifest" intent to repeal a portion of the Freedom of Information Act.

When measured against the high bar for establishing that the 2012 Tiahrt Rider impliedly repealed the Freedom of Information Act, the Government's arguments fall far short.  The Government argues (at 10) that Congress intended to disregard the Freedom of Information Act simply because the 2012 Tiahrt Rider limits the release of some data.  But the Government's argument improperly conflates Congress's intent to restrict the release of some data in certain circumstances with Congress's intent to alter the statutory regime governing the release of data.  "Before holding that the result of the earlier consideration has been repealed or qualified, it is reasonable for a court to insist on the legislature's using language showing that it has made a considered determination to that end."  *See Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 134 (1974).  Congress used no such language in the 2012 Tiahrt Rider.  Moreover, Congress added Exemption 3's Express Citation Requirement in 2009 to serve as an ***additional*** requirement alongside the Withholding Requirement, intending to ***narrow*** the category of statutes that would have otherwise satisfied Exemption 3 prior to its addition in 2009.  But the Government's argument (at 10) that satisfaction of the Withholding Requirement is also sufficient to undo the Express

Citation Requirement would render the Express Citation Requirement a nullity in every case. "The [G]overnment's interpretation thus violates the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019) (quotations omitted).

Unable to meet the "clear and manifest" standard for finding an implied repeal, the Government tries to argue (at 9) that Congress can repeal its earlier acts "by implication," citing *Dorsey v. United States*. But the Government's reliance on *Dorsey* is misplaced because a careful reading of that decision reveals that *Dorsey* did not establish a general standard for implied repeals, and instead only addressed the standard for interpreting a particular statute on repealing penalties from 1871. *Dorsey* addressed the application of a 1871 savings statute "setting forth an important background principle of interpretation" "that a new criminal statute that 'repeal[s]' an older criminal statute shall not change the penalties 'incurred' under that older statute 'unless the repealing Act shall so expressly provide.'" *Dorsey v. United States*, 567 U.S. 260, 272–74 (2012). Importantly, *Dorsey* relied on the Supreme Court's prior holding in *Great Northern Railway Company* that the 1871 savings statute's express statement requirement may yield to later enactments when required by "implication." *Id.* at 274 (citing *Great Northern Ry. Co. v. United States*, 208 U.S. 452, 465 (1908)). But *Great Northern Railway Company* got to that result by adding a critical step to its statutory analysis of the 1871 savings statute that does not apply here at all. *Great Northern Railway Company* first held that the 1871 savings statute is "to be treated as if incorporated in and as a part of subsequent enactments, and therefore ***under the general principles of construction requiring, if possible, that effect be given to all the parts of a law***, the section must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of [the savings statute]." *Great Northern Ry. Co.*, 208 U.S. at 465 (emphasis supplied). In other words, the Supreme Court interpreted the 1871 savings statute as if Congress made its language a part of all future legislation, and only then called for applying "general principles of construction" to that combined statutory text. From those general principles of construction arose *Great Northern Railway Company*'s "necessary implication" standard for interpreting the 1871

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

10

savings statute, which bound the Supreme Court in *Dorsey*.  But that unique statutory scheme is not relevant to answering the question of whether the 2012 Tiahrt Rider impliedly repealed the Express Citation Requirement contained in another statute.  *Dorsey*'s limited applicability to the 1871 savings statute at issue in that case is reinforced by the fact that the Supreme Court has since reaffirmed that Congress must express a "clear and manifest" intent to impliedly repeal a prior statute.  *See Epic Sys. Corp.*, 138 S.Ct. at 1624.

The Government further misconstrues *Dorsey v. United States* (at 9) by suggesting that courts should always look to the "fair implication" of the later statute regardless of its compliance with the earlier one.  But the quoted language is only applicable where "the plain import of a later statute directly conflicts with an earlier statute."  *Dorsey*, 567 U.S. at 274 (quoting *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring)).  As explained above, there is no direct conflict between the Freedom of Information Act and the 2012 Tiahrt Rider, let alone a "clear and manifest" one.

Finally, the 2012 Tiahrt Rider's legislative history further rebuts the Government's interpretation.  The Government contends (at 11) that Congress uses the same language to accomplish the same objective and the reenactment of substantially similar Tiahrt Riders before and after Congress added the Express Citation Requirement sought to accomplish the same objective.  But the objective had changed by 2012 due to Congress' addition of the Express Citation Requirement in 2009.  Unlike in the years preceding 2009, Congress in 2012 needed to repeal or modify the Express Citation Requirement in order to bar disclosure under the Freedom of Information Act.  By using the same language as *before* 2009—which could not have possibly intended to undo a not-yet-enacted statute—Congress could not have intended to undo the Express Citation Requirement.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

11

## II. Mr. Lindsay-Poland's Request For Statistical Aggregate Trace Data Falls Within the Aggregate Data Exception To The 2012 Tiahrt Rider Under Binding Ninth Circuit Law.

Congress ensured that the 2012 Tiahrt Rider does not apply to the publication of "annual statistical reports" or the release of "statistical aggregate data." The 2012 Tiahrt Rider states that it shall not be construed to prevent:

> the publication of [1] annual statistical reports on products regulated by [ATF], including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or [2] statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

Pub. L. No. 112–55, 125 Stat. 552, 609–10. Only the second exception, or the Aggregate Data Exception, is relevant here.[9]

Applying the plain text of the 2012 Tiahrt Rider, the Ninth Circuit ruled in a binding decision that disclosing "statistical aggregate data" to "representatives of the public" such as members of the media falls within the Aggregate Data Exception because it will likely result in its publication. *See Center for Investigative Reporting*, 14 F.4th at 935 ("[I]f ATF turns over information to a 'representative of the public,' such as a reporter, it in effect makes that information generally known to the public."). When members of the media request information, they are serving as "'representative[s] of the public' through which individuals and entities commonly distribute information to the public." *Id.* at 934 (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) ("We have observed that the news media, when asserting the right of access, are surrogates for the public." (internal quotations and citations omitted))). While members of the media such as Mr. Lindsay-Poland are one category of representatives of the public, the Ninth Circuit's binding holding applies to all "representatives of the public." *See Center for Investigative Reporting*, 14 F.4th at 935 (referring to reporters as one example of "representative[s]

---

[9]    While the Government refers (at 3) to this entire provision as the "publication exception," this provision contains two distinct exceptions: one for "annual statistical reports" and one for "statistical aggregate data." *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10. To avoid any confusion, we refer to the relevant exception for statistical aggregate data as the Aggregate Data Exception.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

12

of the public" who make "information generally known to the public."). The thrust of the inquiry is whether the release of the information to the requester will eventually result in that information becoming "generally known to the public." *Id.*

This Court's determination as to whether Mr. Lindsay-Poland represents the public is not limited to the administrative record before ATF. Instead, this Court's "review of agency access decisions under FOIA . . . is de novo, requiring no deference to the agency's determination or rationale regarding disclosures." *Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 977 (9th Cir. 2005); *see also Powell v. U.S. Dep't. of Justice*, 584 F. Supp. 1508, 1515 (N.D. Cal. 1984) (considering submission of additional declarations in the district court proceedings to determine validity of exemption).

The indisputable facts before this Court establish that Mr. Lindsay-Poland is a member of the media. The Freedom of Information Act defines a member of the media as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Center for Investigative Reporting*, 14 F.4th at 935 (looking to analogous language in Section 552(a)(4)(A)(ii)(III) of the Freedom of Information Act for definition of publication). Examples of the "distinct work" that would qualify someone for this status include "a newspaper article," "a substantive press release or editorial comment," or even "editorial comments . . . in interviews with newspapers." *Cause of Action v. FTC*, 799 F.3d 1108, 1122 (D.C. Cir. 2015); *see also Am. Small Bus. League v. U.S. Small Bus. Admin.*, 2022 WL 2047557, at *13 (N.D. Cal. June 7, 2022). For example, in *American Small Business League*, the court found an organization qualified as a representative of the news media when it showed through declarations that it "published press releases via its own website and through other publishers" and that members of its organization "regularly publish opinion pieces and appear in the press to present" on the organization's findings. *Id.* at *14. Mr. Lindsay-Poland routinely gathers information based on his open source research and extensive travel to Mexico and Central America. LP Decl. ¶ 5. He then regularly disseminates his findings in substantive press releases, reports and articles. LP Decl. ¶¶ 5–9. He has published over 75 articles, reports and press releases and has

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

13

been quoted in publication such as *Reuters*.  LP Decl. ¶ 9.  Moreover, the fact that Mr. Lindsay-Poland plans to use the Requested Records in his upcoming reporting is precisely the type of conduct that the Ninth Circuit has said constitutes publication.  *Center for Investigative Reporting*, 14 F.4th at 934 (finding disclosure to constitute publication in part because "the record reveals that the requested data will play a role in [the requester's] upcoming 'project' on gun violence").

The Government's two attempts to avoid this binding precedent are unavailing.

*First*, the Government relies on Section 552(a)(4)(A)(vii) to argue (at 17) that this Court's review of Mr. Lindsay-Poland's status as a member of the media is limited to the record before ATF.  But the Government is applying the wrong provision.  Section 552(a)(4)(A)(vii) solely governs judicial review of fee waiver requests.  *See* 5 U.S.C. § 552(a)(4)(A)(vii) ("***In any action by a requester regarding the waiver of fees under this section***, the court shall determine the matter de novo: Provided, That the court's review of the matter shall be limited to the record before the agency.") (emphasis supplied).[10]  Section 552(a)(4)(B) is the provision that governs the scope of review of actions challenging withholding determinations.  *See* 5 U.S.C. § 552(a)(4)(B).  That provision calls for de novo review and contains no such limiting language.  *Compare* 5 U.S.C. § 552(a)(4)(A)(vii), *with* 5 U.S.C. § 552(a)(4)(B).  Congress's conspicuous omission of language limiting the scope of judicial review with respect to withholding determinations strongly suggests such review is not limited to the record before the agency.  *See Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 697–98 (2021) (absence of language limiting judicial review present in neighboring provision suggests no such limitation exists); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and brackets omitted).

The Government further compounds its error by suggesting (at 16) that the pleading standard and burden of proof of a fee waiver action governs this action challenging the

---

[10]    This is not an action regarding Mr. Lindsay-Poland's fee waiver request, to which ATF has not responded.  *See* Siple Decl. Ex. 2, 33–2 (failing to address Mr. Lindsay-Poland's fee waiver request pursuant to Section 552(a)(4)(A)(iii)).  For the avoidance of doubt, Mr. Lindsay-Poland reserves all arguments with respect to his fee waiver request in the event ATF denies it.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

14

Government's withholding determination.  But once again, the Government is looking at the wrong section of the Freedom of Information Act.  *See supra* at 14.  In actions challenging an agency's withholding determination, ***the agency*** bears the burden of "proving" that Exemption 3 applies, and therefore must prove that Mr. Lindsay-Poland is not a member of the media.  *See Carter*, 307 F.3d at 1088 ("An agency may avoid disclosure only if it proves that the documents fall within one of nine exceptions."); *Am. Civil Liberties Union Found. v. U.S. Dep't of Justice*, 418 F.Supp.3d 466, 481 (N.D. Cal. 2019) ("The exemptions to FOIA are to be narrowly construed . . . and the burden of proving their applicability rests with the government."); 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action" withholding records.).  The Ninth Circuit's consideration of analogous statutory language found in the Freedom of Information Act's fee waiver provisions to help shed light on the meaning of the 2012 Tiahrt Rider does not transform this action over withheld records into a fee waiver action.

The Government does not even attempt to meet its burden needed to prove that Exemption 3 does not apply to Mr. Lindsay-Poland.  The Government offers no evidence of its own concerning Mr. Lindsay-Poland's status as a member of the news media.  As explained *supra*, Mr. Lindsay-Poland's Declaration nevertheless removes any doubt that he is a member of the news media.  *See supra* at 13–14.

Moreover, this is the first time the Government has raised the argument that Mr. Lindsay-Poland is not a member of the media, despite Mr. Lindsay-Poland putting the Government on notice of this fact in his FOIA Request.  *See* Siple Decl. Ex. A, ECF 33–1.  In fact, the Government denied Mr. Lindsay-Poland's administrative appeal solely on the basis of the Second Circuit's *Everytown* decision, not the Ninth Circuit's binding decision in *Center for Investigative Reporting*.  *See* Siple Decl. Ex. C, ECF 33–3.  Having failed to inform Mr. Lindsay-Poland that it was denying his FOIA Request on the basis that he was purportedly not a member of the media, the Government cannot turn around and fault him for not supplementing the administrative record below on that very issue.[11]

---

[11]    ATF's boilerplate statement in its May 17, 2021 Acknowledgement Letter that Mr. Lindsay-Poland was a "non-media, non-commercial requester pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(III)" and thus "entitled to two free hours of search time and up to one hundred pages of duplication

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

15

*Second*, the Government asserts (at 18–19) that Mr. Lindsay-Poland's request for datasets broken down by ZIP code seeks non-aggregate data because certain ZIP codes contain only a single Federal Firearm Licensee (FFL).   But the Government misconstrues the FOIA Request and misapplies relevant Ninth Circuit law.  The FOIA Request at issue seeks, "***[f]or each country, and each year,*** the number of firearms recovered and traced to a federal firearms licensee from each: a) state, b) county, and c) ZIP code."  Siple Decl. Ex. A, ECF 33–1 (emphasis supplied).  Thus, this FOIA Request seeks a "number" that combines data spanning over a 365 day period for a given source country.  Even if a small minority of ZIP codes contain a single FFL as the Government suggests, the Requested Record would simply tally the number of traces to that FFL over an entire year.  This meets the plain definition of aggregate, which "refers to a summary form of information 'formed by the collection of units or particles into a body, mass, or amount.'"   *Center for Investigative Reporting*, 14 F.4th at 933 (quoting Merriam-Webster Online Dictionary).[12]   Data associated with a single FFL is not any less aggregate than data that is associated with a single year.

## III.    The 2012 Tiahrt Rider Is Not A Withholding Statute With Respect To Statistical Aggregate Data.

As previously discussed, the 2012 Tiahrt Rider fails Exemption 3's Express Citation Requirement and Mr. Lindsay-Poland's FOIA Request falls within the 2012 Tiahrt Rider's Aggregate Data Exception.  But the 2012 Tiahrt Rider is not a valid basis to deny access to statistical aggregate data for the additional reason that it does not meet the requirements for a withholding statute with respect to such data.  A withholding statute must either "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establish[]

without charge" pursuant to 28 C.F.R. § 16.10(d)(4) could not have put Mr. Lindsay-Poland on notice that ATF was withholding the Requested Records on that basis.  *See* Siple Decl. Ex. B, ECF 33–2.  The May 17, 2021 Acknowledgement Letter predated ATF's withholding determination by over half a year.  *See* Siple Decl. Ex. C, ECF 33–3.  Mr. Lindsay-Poland was also under no obligation to administratively appeal that fee status determination because he did not request it.  As noted *supra* at note 10, Mr. Lindsay-Poland had requested a fee waiver under an entirely different provision, Section 552(a)(4)(A)(iii), to which the Government failed to respond.

[12]    In the context of this FOIA Request, FFLs, states, counties and ZIP codes all relate to "trafficking channels" and thus satisfy the requirement that the data relate to "firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations."  *See* Pub. L. No. 112–55, 125 Stat. 552, 609–10.  The Government does not appear to contest this point.

**Opposition to Defendants' Motion for Summary Judgment**
**& Plaintiff's Cross-Motion for Summary Judgment**
**Case No. 3:22-cv-07663-EMC**

16

1   particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C.

2   § 552(b)(3)(A).  The purpose of this language, which was modified in 1976, was "to eliminate from

3   Exemption 3 those statutes that granted administrative agencies such [broad] discretion with respect

4   to the disclosure or nondisclosure of material within their possession" following the Supreme

5   Court's decision in *Administrator, FAA v. Robertson*, 422 U.S. 255 (1975).  *Consumer Prod. Safety*

6   *Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 121 n.18 (1980).  Thus, "statutes setting forth very

7   general benchmarks for secrecy 'in fact delegate to administrators the entire burden of identifying

8   the problems disclosure might generate' and thus 'do not satisfy subsection (B)'s requirement that

9   Congress have articulated 'particular criteria.'"  *Church of Scientology*, 633 F.2d at 1330 (quoting

10  *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 629 (D.C. Cir. 1978)).

11       The question of whether Congress granted an agency sufficient discretion to remove an

12  enactment from Exemption 3 is answered on a provision-by-provision basis.  *See Julian*, 486 U.S.

13  at 9 (finding information in presentence reports beyond "confidential sources, diagnostic opinions,

14  and other information that may cause harm to the defendant or to third parties" to not qualify under

15  Exemption 3).  Here, Congress determined that statistical aggregate data, among other categories

16  of information, should be treated differently by excluding such data from the general non-disclosure

17  regime of the first part of the 2012 Tiahrt Rider.  That calls for a separate analysis of whether

18  statistical aggregate data must be withheld from the public.

19       The 2012 Tiahrt Rider plainly does not require that statistical aggregate data be withheld

20  from the public.  Congress permitted ATF to publish such data.  *See* Pub. L. No. 112–55, 125 Stat.

21  552, 609–10.  Nor does the 2012 Tiahrt Rider provide agencies with "particular criteria" for

22  determining when to release such data.  The 2012 Tiahrt Rider instead grants ATF broad discretion

23  to release statistical aggregate data, only requiring that the data be "regarding firearms traffickers

24  and trafficking channels, or firearms misuse, felons, and trafficking investigations."  *See* Pub. L.

25  No. 112–55, 125 Stat. 552, 609–10.  This "general benchmark[] for secrecy" does not satisfy

26  Exemption 3.  *See Church of Scientology*, 633 F.2d at 1330.

27                                      **CONCLUSION**

28       The Government's Motion for Summary Judgment should be denied and Mr. Lindsay-

1    Poland's Cross-Motion for Summary Judgment should be granted.

2

3

4    Dated: July 31, 2023

5                                            CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                             */s/ Elizabeth Vicens*
6
                                             Heather S. Nyong'o (SBN 222202)
7                                            hnyongo@cgsh.com
                                             650 California Street Suite 2000
                                             San Francisco, CA 94108
8
                                             Elizabeth Vicens (Admitted *pro hac vice*)
9                                            evicens@cgsh.com
                                             Andrew G. Khanarian (Admitted *pro hac vice*)
10                                           akhanarian@cgsh.com
                                             One Liberty Plaza
11                                           New York, NY 10006

12                                           GIFFORDS LAW CENTER TO PREVENT GUN
                                             VIOLENCE
13
                                             David Pucino (*Pro Hac Vice* pending)
14                                           William T. Clark (*Pro Hac Vice* forthcoming)
                                             244 Madison Ave Suite 147
15                                           New York, NY 10016

16                                           *Attorneys for Plaintiff John Lindsay-Poland*

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-07663-EMC

18