1    D. VICTORIA BARANETSKY (SBN 311892)
     DARA GRAY (SBN 349865)
2    **THE CENTER FOR INVESTIGATIVE**
     **REPORTING**
3    1300 65th Street, Suite 200
     Emeryville, CA 94608
4    Telephone: (510) 982-2890
     Fax: (510) 849-6141
5    vbaranetsky@revealnews.org

6    MEGHAN FENZEL (SBN 324139)
     **JASSY VICK CAROLAN LLP**
7    355 South Grand Avenue, Suite 2450
     Los Angeles, California 90071
8    Telephone: (310) 870-7048
     Facsimile: (310) 870-7010
9    mfenzel@jassyvick.com

10

11   Counsel for Amicus Curiae
     THE CENTER FOR INVESTIGATIVE
     REPORTING
12

13

14                    **UNITED STATES DISTRICT COURT**

15              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN FRANCISCO DIVISION**

17

18   JOHN LINDSAY-POLAND                    Case No. 3:22-cv-7663-EMC

19               Plaintiff,
                                            **BRIEF OF *AMICUS CURIAE* OF CENTER**
20        vs.                               **FOR INVESTIGATIVE REPORTING IN**
                                            **SUPPORT OF PLAINTIFF'S CROSS-**
21   UNITED STATES DEPARTMENT OF            **MOTION FOR SUMMARY JUDGMENT**
     JUSTICE; and BUREAU OF ALCOHOL,
22   TOBACCO, FIREARMS AND
     EXPLOSIVES,                            Date:   October 19, 2023
23                                          Time:   1:30 p.m.
                 Defendants.                Courtroom: 4, 17th Floor
24                                          Judge:  Hon. Edward M. Chen

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     INTEREST OF AMICUS CURIAE ........................................................................... 1

III.    ARGUMENT ............................................................................................................. 2

        A.      The Government Disregards Binding Ninth Circuit Precedent ....................... 2

        B.      ATF's Ongoing Attempt to Expand Exemption 3 and the Tiahrt Rider
                Beyond the Plain Text of the OPEN FOIA Act Is A Clear Example of
                "Exemption Creep" ........................................................................................ 5

        C.      ATF Incorrectly Interprets the Tiahrt Amendment Which Has a
                Specific Carve-Out for Statistical Aggregate Data That Was Aimed To
                Aid Public Access ......................................................................................... 8

        D.      Withholding the Data Sought Impedes the Press and Harms the Public ........ 11

IV.     CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Milligan*,
  599 U.S. ___, 143 S.Ct. 1487 (2023) ...................................................................4

*Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*,
  58 F.4th 643 (2d Cir. 2023)................................................................................4

*Am. Small Bus. League v. United States Off. of Mgmt. & Budget*,
  No. 20-CV-07126-DMR, 2022 WL 4544726 (N.D. Cal. Sept. 28, 2022) ...............4

*Comm. on the Judiciary, U.S. House of Representatives v. McGahn*,
  968 F.3d 755 (D.C. Cir. 2020) ...........................................................................13

*County of Allegheny v. ACLU Greater Pittsburgh Chapter*,
  492 U.S. 573, 106 L. Ed. 2d 472, 109 S. Ct. 3086 (1989) ..................................5

*Ctr. for Investigative Reporting v. United States Dep't of Just.*,
  14 F.4th 916 (9th Cir. 2021) *amending* 982 F.3d 668 (9th Cir. 2020)
  ("*CIR v. DOJ*") ......................................................................1, 2, 3, 4, 7, 8, 9, 10

*Ctr. for Investigative Reporting v. United States Dep't of Just.*,
  No. 3:17-cv-06557-JSC, Dkt. 74 (N.D. Cal. Oct. 7, 2022) ..............................1, 2

*Day v. Apoliona*,
  496 F.3d 1027 (9th Cir. 2007)............................................................................5

*Dept. of Air Force v. Rose*,
  425 U.S. 352 (1976) .........................................................................................8

*Everytown for Gun Safety Support Fund v. ATF*,
  984 F.3d 30 (2d Cir. 2020) ................................................................................3

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ....................................................................................10

*Kimble v. Marvel Entertainment, LLC*,
  576 U.S. 446 (2015) .........................................................................................4

*McGrain v. Daugherty*,
  273 U.S. 135 (1927) ........................................................................................13

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003)..............................................................................4

*Mills v. Alabama*,
  384 U.S. 214 (1966) ........................................................................................11

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971) ........................................................................................12

*Petroleum Info. Corp. v. United States Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) .........................................................................4

*Ramos v. Louisiana*,
    590 U. S. ___, 140 S.Ct. 1390 (2020) ......................................................................4

*Reporters Comm. For Freedom of Press v. US. Dep't of Justice*,
    816 F.2d 730 (D.C. Cir. 1987) *rev'd on other grounds by* 489 U.S. 749 (1989)...................5

*Trump v. Mazars USA, LLP*,
    140 S.Ct. 2019 (2020) ........................................................................................13

*Watkins v. ATF*,
    No. 04-800, 205 WL 2334277 (D.D.C. Sept. 24 1, 2005) ....................................11


**U.S. Constitution**

First Amendment...............................................................................................12


**Federal Statutes**

5 U.S.C.
    § 552(a)(4)(B) ...............................................................................................1
    § 552(b)(3)............................................................................................1, 5, 6, 8
    § 552(b)(3)(B) ...............................................................................................5

Consolidated Appropriations Act
    2005, Pub. L. No. 108- 447, 118 Stat. 2809, 2859–60 (2004) (2005 Rider)...........8
    2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903–04 (2007) (2008 Rider)...........8
    2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009) (2010 Rider)........8, 9
    2012, Pub. L. 112-55, 125 Stat. 552, 610........................................5, 9, 10

Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 644, 117 Stat. 11, 473–74
    (2003) .......................................................................................................8, 9

Consolidated and Further Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10
    (2011) (2012 Rider)............................................................................................9

Department of Homeland Security Appropriations Act, Pub. L. No. 111-83, § 564, 123 Stat. 2142,
    2184 (2009) ......................................................................................................6

Dodd–Frank Wall Street Reform and Consumer Protection (Dodd–Frank) Act, Pub. L.
    No. 111-203, 124 Stat. 1376 (2010) .......................................................................7

National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat. 1298,
    1600–01, 1604 (2011) ........................................................................................7

Protecting and Securing Chemical Facilities from Terrorist Attacks Act of 2014, Pub. L.
    No. 113-254 (2014) ............................................................................................7

**Miscellaneous**

155 Cong. Rec. S3175-76 (daily ed. Mar. 17, 2009) .............................................................6, 8

Administrative Office of the U.S. Courts, *Judicial Emergencies*, United States Courts (Jun. 21, 2023), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies ...........................................................................................................................3

Artis Curiskis and Kara Oehler, *The COVID Tracking* Project Part 1-3, Reveal (Apr. 15, 2023), https://revealnews.org/article/covid-tracking-project ..........................................13

Cara Tabachnick, *Ghost gun use in U.S. crimes has risen more than 1,000% since 2017, federal report says*, CBS NEWS (Feb. 2, 2023), https://www.cbsnews.com/news/ghost-gun-use-crimes-1000-percent-rise-since-2017-atf-report/ ....................................................12

Champe Barton, *New Data Suggests a Connection Between Pandemic Gun Sales and Increased Violence*, THE TRACE (Dec. 8, 2021), https://www.thetrace.org/2021/12/ atf-time-to-crime-gun-data-shooting-pandemic/ ...........................................................................................12

Dana Priest and Anne Hull, *Soldiers Face Neglect, Frustration At Army's Top Medical Facility*, The Washington Post (Feb. 18, 2007) ....................................................................13

Gina Stevens, *The Freedom of Information Act and Nondisclosure Provisions in Other Federal Laws* (Sept. 24, 2010), https://fas.org/sgp/crs/secrecy/R41406.pdf .........................................7

H.R. Rep. No. 576, 108th Cong., 2d Sess. (2004) .................................................................11

https://www.justice.gov/oip/ctr-investigative-reporting-v-doj-no-18-17356-2021-wl-4314789-9th-cir-sept-23-2021-wardlaw-j .........................................................................................3

https://www.justice.gov/oip/page/file/1197096/download (Exemption 3 Guide) ..............3

https://www.justice.gov/oip/page/file/1199421/download (Procedural Requirement Guide) ............3

Jaclyn Diaz, *6 major takeaways from the ATF's first report in 20 years on U.S. gun crime*, NPR (Feb. 10, 2023), https://www.npr.org/2023/02/10/1153977949/major-takeaways-from-the-atf-gun-violence-report ...............................................................................................12

James V. Grimaldi & Sari Horowitz, *Industry Pressure Hides Gun Trace, Protects Dealers from Public Scrutiny*, WASH. POST, Oct. 24, 2010 ....................................................................9

Jeff Asher, *Newly purchased firearms may play a role in US murder surge, data suggests*, THE GUARDIAN ( Sept. 30, 2022), https://www.the guardian.com/us-news/2022/sep/30/us-murder-rate-increase-firearms ................................................................................................12

Jeff Asher & Rob Arthur, *The Data Are Pointing to One Major Driver of America's Murder Spike*, THE ATLANTIC (Jan. 10, 2022), https://www.theatlantic.com/ideas/archive /2022/01/gun-sales-murder-spike/621196/ ..................................................................................................12

Maggie Prosser, *ATF Ballistics Data Network Takes aim at Gun Crime*, GOVERNMENT TECHNOLOGY (Nov. 29, 2022), https://www.govtech.com/public-safety/atf-ballistics-data-network-takes-aim-at-gun-crime ..............................................................................12

Martin Linsky, Impact: How the Press Affects Federal Policymaking, W.W. Norton (1986) .........13

U.S. Department of Justice, *Statutes Found to Qualify under Exemption 3 of the FOIA*, (December 2016), https://www.justice.gov/oip/page/file/623931/download. ............................................7

U.S. Government Accountability Office, *Freedom of Information Act: Update on Federal Agencies' Use of Exemption Statutes* (Feb. 11, 2021), https://www.gao.gov/products/gao-21-148 ........7

Victoria Baranetsky, *Corporate Control of Public Information*, Columbia Journalism Review (May 11, 2023) ...............................................................................................................7

William Krouse, Cong. Research Serv., RS22458, *Gun Control: Statutory Disclosure Limitation on ATF Firearms Trace Data* (2009), https://sgp.fas.org/crs/misc/RS22458.pdf .................10

## I.   INTRODUCTION

Members of the public who have had their Freedom of Information Act (FOIA) requests denied have one main recourse: litigation in federal district court through FOIA. 5 U.S.C. 552(a)(4)(B). The plaintiff in this case, John Lindsay-Poland should not have needed to use that recourse because the issues in this case have already been squarely decided. As Defendants admit in their brief (Dkt. 32, 18 n.2), *amicus curiae* previously established binding Ninth Circuit precedent on the same legal questions at issue in this case. Moreover, *amicus curiae* have discovered that the plaintiff here is only one of several dozens of FOIA requesters that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has denied, forcing needless litigation, and thus burdening the courts and depriving the public of their right to crucial information.  The ATF should disclose the requested data to Mr. Lindsay-Poland and, going forward, to other FOIA requesters seeking the same type of information.

## II.   INTEREST OF AMICUS CURIAE

The Center for Investigative Reporting ("CIR" d/b/a "Reveal") files this *amicus curiae* brief in support of Plaintiff's Cross-Motion for Summary Judgment. Founded in 1977, CIR is the nation's oldest nonprofit investigative newsroom. Doing business as Reveal, CIR produces investigative journalism on its website revealnews.org, the Reveal national public radio show, the Reveal podcast, and various documentary projects. CIR often collaborates with other newsrooms across the country. It is a California nonprofit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

CIR has an important perspective to bring to this matter because, for five years, from 2017 through 2022, CIR litigated a FOIA case against the ATF regarding nearly the same type of data the Plaintiff seeks in the above-captioned FOIA lawsuit – and the same legal issues. CIR ultimately prevailed in a published Ninth Circuit opinion and received the requested data and a settlement payment from the Government of more than $300,000. *See Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916, 922 (9th Cir. 2021) *amending* 982 F.3d 668 (9th Cir. 2020*)* ("*CIR v. DOJ*")*; see also Ctr. for Investigative Reporting v. United States Dep't of Just.*, No. 3:17-cv-06557-JSC, Dkt. 74 (N.D. Cal. Oct. 7, 2022). In that opinion, the Ninth Circuit held that the

data should be disclosed because: (1) the 2012 Tiahrt Rider does not cite to OPEN FOIA and 5 U.S.C. § 552(b)(3), so it doesn't qualify for FOIA Exemption 3; *see CIR v. DOJ*, 14 F.4th at 931–32 (2) the Tiahrt rider permitted for disclosure under its exception for publishing "statistical aggregate data;" *see id*. at 933–36; and (3) querying a government agency's database does not amount to the creation of a new record; *see id*. at 937–39. Despite CIR's hard-fought win for public right of access to firearm data, which cost hundreds of hours of staff time and significant internal and pro bono resources, the ATF has not followed this binding Ninth Circuit precent in responding to *any* FOIA requests filed in the Ninth Circuit, including but not limited to Mr. Lindsay-Poland's. This agency decision to repeatedly stonewall access to firearm trace data threatens not only CIR's work but all news outlets, academics, and policymakers who seek similar data necessary to report on firearms and gun violence in our nation.

No party's counsel has authored the attached brief, in whole or in part, nor has any person other than *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## III.    ARGUMENT

### A.    The Government Disregards Binding Ninth Circuit Precedent

This lawsuit should never have been filed because the ATF should have released the requested data under binding Ninth Circuit precedent. From 2017 to 2022, *amicus curiae* litigated under FOIA to gain access to statistical aggregate data on firearm tracing from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and won. *See CIR v. DOJ*, 14 F.4th 916. The Government sought rehearing *en banc* of the Ninth Circuit decision, paid CIR a six-figure attorneys' fees settlement, and did not petition the Supreme Court for writ of certiorari despite a circuit split. *See CIR v. DOJ*, No. 3:17-cv-06557-JSC, Dkt. 74. Rule of law demands that the ATF follow this established precedent, at least within the Ninth Circuit. Yet, in response to all FOIA requests, it has failed to do so. *See* Declaration of D. Victoria Baranetsky ¶ 4.

Soon after the *CIR v. DOJ* ruling, CIR heard from journalists and advocates that the ATF was denying FOIA requests for firearms trace data, in defiance of the *CIR v. DOJ* ruling. In April 2022, while discussing attorneys' fees with opposing counsel, CIR expressed concerns to ATF's

counsel about the agency's denial sent to Mr. Lindsay-Poland. *See* Baranetsky Decl. ¶ 5, Ex. A. CIR asked ATF over email, "Does the Government intend to ignore the Ninth Circuit's decision . . .?" *Id.* CIR received no response.

ATF's failure to respect precedent is not merely an oversight. While the Department of Justice tracked the published 2020 opinion and 2021 amended opinion on its Office of Information Policy website,[1] conspicuously, the case is absent from the DOJ's FOIA guides. Despite the FOIA guide being updated in 2021, nowhere in it does the DOJ mention the 2020 or 2021 *CIR v. DOJ* rulings, not even in the Exemption 3 or Tiahrt Amendment sections.[2] If the DOJ is training officers through these guides they would not know about the Ninth Circuit decision.

Additionally, according to ATF records, since *CIR v. DOJ* the Government has denied multiple FOIA requestors seeking statistical aggregate gun data by expressly declining to follow the Ninth Circuit precedent, as occurred with Mr. Lindsay-Poland. For instance, former CIR journalist, Alain Stephens, who brought the initial request in 2017, submitted a 2023 FOIA request seeking updated ATF data that was disclosed to him in the 2021 case, and received an agency denial:

> [T]he Second Circuit held that the requested information is exempt from disclosure. *See Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30 (2d Cir. 2020). Although the Ninth Circuit recently reached a different result on trace data in *Center for Investigative Reporting v. U.S. Department of Justice*, 14 F.4th 916 (9th Cir. 2021), the Ninth Circuit expressly did not address the ground on which the Second Circuit prohibited disclosure, *see id.* at 932–33.

*See* Baranetsky Decl. ¶ 6, Ex. B.[3] This reasoning is especially egregious considering that ATF did not petition for writ of certiorari. By independently choosing to apply the Second Circuit's decision over the Ninth Circuit decision, ATF masquerades as the Supreme Court.

---

[1] *Ctr. for Investigative Reporting v. DOJ*, No. 18-17356, 2021 WL 4314789 (9th Cir. Sept. 23, 2021) (Wardlaw, J.), withdrawing, 982 F.3d 668 (9th Cir. 2020), https://www.justice.gov/oip/ctr-investigative-reporting-v-doj-no-18-17356-2021-wl-4314789-9th-cir-sept-23-2021-wardlaw-j.
[2] *See* https://www.justice.gov/oip/page/file/1197096/download (Exemption 3 Guide); https://www.justice.gov/oip/page/file/1199421/download (Procedural Requirement Guide)
[3] In a ruling issued while the *CIR v. DOJ* case was pending, the Second Circuit came to a different conclusion in *Everytown v. ATF* than the Ninth Circuit did in *CIR v. DOJ* regarding whether ATF firearm tracing data fell under FOIA Exemption 3. 984 F.3d 30 (2d Cir. 2020). But the *CIR* case came second and the Ninth Circuit was aware of all of the arguments in the Second Circuit case. Still, ATF did not petition the Supreme Court to address the circuit split.

Seeking to more fully understand the impact of ATF's disregard for the Ninth Circuit ruling, CIR submitted a FOIA request to requesting for the number of times ATF denied a FOIA request for aggregate gun data subsequent to *CIR v. DOJ*. CIR also asked for all of ATF's responses to FOIA requests citing either the Second Circuit's *Everytown* case or *CIR v. DOJ*. ATF responded that in seventy-seven responses, ATF denied access to data and expressly declined to follow the Ninth Circuit's binding precedent, even to the fourteen requesters within the Ninth Circuit's geographic jurisdiction. *See* Baranetsky Decl. ¶¶ 7–9, Exs. C–E.[4] No other requester has received trace data since *CIR v. DOJ*. *See id.*

ATF's actions impose an unreasonable burden on the public, FOIA requesters, and the courts. In choosing to take a position contrary to the law, ATF is forcing those rightfully seeking access to government data to relitigate these issues or stay silent. *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1439 (D.C. Cir. 1992) ("FOIA precedent, like the exemptions these decisions construe, must be read circumspectly, with the statute's dominant disclosure direction always in view.") Not all requesters have the capacity to vindicate their rights in court. CIR previously spent five years in court on these same issues, expending significant non-profit and pro bono resources. *See* Baranetsky Decl. ¶ 4. CIR should not have to revisit these same issues, or, as here, file amicus briefs to advocate for respect of *stare decisis*. *See Allen v. Milligan*, 599 U.S. ___, 143 S.Ct. 1487 (2023) (Although statutory stare decisis is not absolute, "the Court has ordinarily left the updating or correction of erroneous statutory precedents to the legislative process.") (Kavanaugh, J. concurring); *Ramos v. Louisiana*, 590 U. S. ___, 140 S.Ct. 1390, 1413

---

[4] Federal dockets further reflect instances where the Government has defied the Ninth Circuit's ruling on grounds unrelated to the ATF and the Tiahrt Amendment. *See Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't,* 58 F.4th 643, 659 (2d Cir. 2023); *see also Am. Small Bus. League v. United States Off. of Mgmt. & Budget*, No. 20-CV-07126-DMR, 2022 WL 4544726, at *15 (N.D. Cal. Sept. 28, 2022) (applying the *CIR v. DOJ* precedent, noting that the Government is obligated to query existing government databases). In *ACLU Immigrants' Rights Project v. ICE*, the government argued that searching a database for records was the creation of a new record, which the Ninth Circuit had already reversed in *CIR v. DOJ*. Citing to CIR's decision, the Second Circuit reversed the district court's 2021 order granting summary judgment to ICE, holding that requiring ICE to search existing database records to provide responsive, non-confidential access to public records was not creation of a new record.

1    (2020) (Kavanaugh, J. concurring in part); *see also, e.g.*, *Kimble v. Marvel Entertainment*, LLC, 576

2    U.S. 446, 456 (2015); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (confirming

3    the Ninth Circuit's stare decisis principle that a question already answered in binding precedent will

4    be controlled by that answer when the same question is presented in the future).[5] Nor is it

5    reasonable for the Government to burden the Court, a court currently under a judicial emergency,[6]

6    by taking positions contrary to governing law. Like the public, the Government should be bound by

7    rule of law.

8          **B.  ATF's Ongoing Attempt to Expand Exemption 3 and the Tiahrt Rider Beyond the**

9              **Plain Text of the OPEN FOIA Act Is A Clear Example of "Exemption Creep"**

10         At the heart of this case sits FOIA Exemption 3 which permits the government to withhold

11   records under FOIA, if a law prohibits disclosure of information *and* the statute qualifies as an

12   Exemption 3 withholding statute. Here, the government argues the Tiahrt Amendment meets that

13   standard. It claims the Tiahrt prohibits disclosure of the gun records and qualifies as a withholding

14   statute, according to the requirements in Exemption 3. However, that assertion is incorrect on both

15   accounts. But *amicus curiae* write not only to underscore that ATF's position is legally wrong but to

16   underscore that ATF's persistent use of the Tiahrt Amendment and Exemption 3 to withhold

17   records affronts Congress' intent in the OPEN FOIA Act to avoid "exemption creep."

18         To begin, Exemption 3 reads that government records are properly withheld under FOIA if

19   they are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The OPEN FOIA

20   Act of 2009 amended Exemption 3 to provide the requirement that: Exemption 3 will only apply to

21   a statute enacted after October 28, 2009 if that statute "specifically cites to" Exemption 3, 5 U.S.C.

22   §552(b)(3)(B). There is no dispute that the 2012 Tiahrt Rider, enacted November 18, 2011, does not

23   specifically cite to 5 U.S.C. §552(b)(3)(B). *See* Consolidated Appropriations Act, 2012, Pub. L.

24   112-55, 125 Stat. 552, 610. Consequently, by its plain language, the 2012 Tiahrt Rider is simply not

25   _____
     [5] *See also Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (confirming that district courts are
26   bound by circuit precedent); *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S.
     573, 106 L. Ed. 2d 472, 109 S. Ct. 3086 (1989).

27   [6] Administrative Office of the U.S. Courts, *Judicial Emergencies*, United States Courts (Jun. 21,
     2023), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.
28

1  a withholding statute under Exemption 3. *Reporters Comm. For Freedom of Press v. US. Dep't of*

2  *Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987) (explaining that applicability of Exemption 3 to a

3  statute is determined by the statute's actual words), *rev'd on other grounds by* 489 U.S. 749

4  (1989).[7]

5       But *amicus curiae*'s concern does not end here. This case awakens Congress' core worry

6  about Exemption 3, that it can easily be abused by government to improperly exempt too much

7  government data outside the bounds of FOIA. Since FOIA Exemption 3 was passed in 1966,

8  Congress has been wary of Exemption 3's susceptibility of ballooning to the point that it would

9  swallow FOIA's general rule. For this reason, Congress has amended Exemption 3 multiple times to

10 make more stringent requirements to ensure that not just any statute could qualify as a withholding

11 statute. For instance, in 1976, Congress demanded withholding statutes include "sufficiently

12 definite standards" for withholding, rather than granting "broad discretion" to an agency to withhold

13 any and all records. 5 U.S.C. § 552(b)(3). Most recently, this was the core worry that compelled

14 Congress to pass the OPEN FOIA Act of 2009 after identifying an alarming number of statutes that

15 permitted withholding and were often written in very ambiguous terms.

16      In sponsoring the OPEN FOIA Act, Senator Patrick Leahy expressed deep concern over this

17 trend which he dubbed as "exemption creep" —a detriment to "the American public's right to

18 know," 155 Cong. Rec. S3175-76 (daily ed. Mar. 17, 2009). As a guard against such "exemption

19 creep," the OPEN FOIA Act's requires withholding statutes to "specifically cite [Exemption 3] in

20 order to have the statute qualify as a withholding statute." *See* Department of Homeland Security

21 Appropriations Act, Pub. L. No. 111-83, § 564, 123 Stat. 2142, 2184 (2009) (legislation containing

22 Open FOIA Act). Senator Leahy explained "(b)(3) statutory exemptions should be clear and

23 unambiguous" and any statute that does not explicitly cite FOIA Exemption 3 cannot qualify for the

24 exemption. *See* 155 Cong. Rec. S3175*.* In essence, the OPEN FOIA Act's requirement double

25 checks Congress' intent to withhold records under a statute and Exemption 3.

26

27 ─────────────────────
   [7] This is further underscored, by the fact that Congress enacted the 2010 Tiahrt Rider just 49 days
28 after it enacted the OPEN FOIA Act, again without any citation to or mention of Exemption 3.

Despite these attempts to limit the potential for abuse of Exemption 3, exemption creep has continued to worsen in this country. While Congress has complied with the OPEN FOIA Act requirement in certain withholding statutes, including the Dodd Frank Act of 2010, the National Defense Authorization Act of 2012, and the Protecting and Securing Chemical Facilities From Terrorist Attacks Act of 2014, an accelerating number of Exemption 3 statutes are still being passed every year without the required language.[8] Moreover, since 2009, courts have regularly found statutes to qualify as Exemption (b)(3) statutes even if they don't contain that language. U.S. Department of Justice, *Statutes Found to Qualify under Exemption 3 of the FOIA*, (December 2016), https://www.justice.gov/oip/page/file/623931/download. Based on these circumstances, federal agencies have calculated that approximately 79 statutes are used as Exemption (b)(3) statutes, even when a vast majority of these statutes do not contain the required language. Victoria Baranetsky, *Corporate Control of Public Information*, Columbia Journalism Review (May 11, 2023). One government report also confirmed, "agencies often rely on statutes as a basis for Exemption 3 withholding without a court having determined whether the nondisclosure statute qualifies as an Exemption 3 withholding statute." Gina Stevens, *The Freedom of Information Act and Nondisclosure Provisions in Other Federal Laws* (Sept. 24, 2010), https://fas.org/sgp/crs/secrecy/R41406.pdf.

Even more numerous than the quantity of Exemption 3 statutes that are passed is the growing number of times these statutes are employed. U.S. Government Accountability Office, *Freedom of Information Act: Update on Federal Agencies' Use of Exemption Statutes* (Feb. 11, 2021), https://www.gao.gov/products/gao-21-148. The DOJ calculated that between 2010 and 2019, 91 federal agencies reported withholding information using at least one of 256 withholding statutes more than 525,000 times. *Id.* The DOJ also found that agencies' overall use of (b)(3) exemptions more than doubled from fiscal year 2012 to fiscal year 2019. *Id.* Additionally, in fiscal year 2019,

---

[8] Dodd–Frank Wall Street Reform and Consumer Protection (Dodd–Frank) Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010); National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat. 1298, 1600–01, 1604 (2011); Protecting and Securing Chemical Facilities from Terrorist Attacks Act of 2014, Pub. L. No. 113-254 (2014).

1    agencies used FOIA's nine exemptions nearly 970,000 times, and of this total, agencies cited the

2    (b)(3) exemption nearly 72,000 times. *Id.* The DOJ's report makes clear that the exemption is often

3    being used as a shield to disclosing important public information.

4           However, at least one recent ruling from the Ninth Circuit shined some optimism on the

5    problem of exemption creep. In *CIR v. DOJ*, all parties agreed that the Tiahrt Amendment *did not*

6    *cite* Exemption 3, as required under OPEN FOIA Act. 14 F.4th 916, 927 ("though enacted after the

7    OPEN FOIA Act of 2009, [the Tiahrt Rider] makes no reference to 5 U.S.C. § 552(b)(3)"). Based

8    on this plain and simple reading of the statutes, the Ninth Circuit held that "Exemption 3 does not

9    apply." 14 F.4th at 927. The case ultimately helped enforce the explicit purpose of the OPEN FOIA

10   Act and Congress' legislative intent to thwart the "alarming number of FOIA (b)(3) statutes" that

11   have not been carefully considered by Congress. 155 Cong. Rec. S3175-76.

12          For the government to then apply this same logic to this case not only affronts the Ninth

13   Circuit's ruling, but it also ignores Congress' long-standing concern that Exemption 3 not be

14   extended too far to devolve into exemption creep. *Dept. of Air Force v. Rose*, 425 U.S. 352, 361

15   (1976) (stating that Exemption 3 statutes should be read narrowly). This is particularly important in

16   a case like this one, involving a statute where Congress did not check its homework, and properly

17   cite Exemption 3, unlike other statutes where it has easily met this requirement. By upholding *CIR*

18   *v. DOJ*, this Court may help stop the growing number of Exemption 3 statutes, particularly those

19   not fully considered by Congress.

20          **C.  ATF Incorrectly Interprets the Tiahrt Amendment Which Has a Specific Carve-**

21              **Out for Statistical Aggregate Data That Was Aimed To Aid Public Access**

22          The controlling and most recent iteration of the Amendment is the 2012 Tiahrt Rider (2012

23   Rider) that reenacted the 2010 Tiahrt Rider (2010 Rider).[9] *See* Pub. L. No. 111-117, 123 Stat. 3034,

24   _____

     [9] The first iteration of the Amendment passed in 2003 as a rider to an appropriations bill dictating
25   exactly how federal funds could be used to disclose information from ATF's Firearms Trace
     Database System. Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 644, 117
26   Stat. 11, 473–74 (2003). Since then, different versions of the Tiahrt Amendment, limiting public
     access to gun trace data, have been attached to several subsequent appropriation bills. *See*
27   Consolidated Appropriations Act, 2005, Pub. L. No. 108- 447, 118 Stat. 2809, 2859–60 (2004)
     (2005 Rider); Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903–

28

3128–29 (2009); Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011). *Amicus curiae* write to highlight that not only the plain reading of the Tiahrt Amendment but the legislative purpose behind it supports disclosure of records in this case.

Unlike the original Tiahrt Amendment passed in 2003 that explicitly prohibited the disclosure of any ATF gun trace data pursuant to a FOIA request, Pub. L. No. 108-7 § 644 (2003),[10] subsequent versions of the Tiahrt Amendment authorized the ATF to disclose gun trace data in to benefit public access. In Congress' most recent iteration of the Amendment, the 2012 Rider, it adopted specific language from the 2010 Rider that provided a carve-out permitting the disclosure of "statistical aggregate data." The relevant section reads in part:

> [D]uring the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System Database maintained by [ATF] . . . **except that this proviso shall not be construed to prevent . . . the publication of** annual statistical reports on products regulated by [ATF], including total production, importation, and exportation . . . , **or statistical aggregate data** regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations[.]

Pub. L. 112-55, 125 Stat. 552, 609-610 (2011).

When it comes to interpreting statutory FOIA exemptions, the Supreme Court has held that "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Here, the structure of the statute supports the argument that the Rider was in favor of at least some public access. While the 2012 Rider restates the general rule that the ATF cannot disclose data, the second section of the law narrows this broad restriction with several exceptions. *See* Pub. L. 112-55, 125 Stat. 552, 610 (2011). It states, that the Tiahrt Amendment "shall not be construed to prevent" the disclosure of certain aggregate data, including "statistical aggregate data." *Id.*

---

04 (2007) (2008 Rider); Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009) (2010 Rider); Consolidated and Further Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011) (2012 Rider).

[10] *See* James V. Grimaldi & Sari Horowitz, *Industry Pressure Hides Gun Trace, Protects Dealers from Public Scrutiny*, WASH. POST, Oct. 24, 2010.

1    As analyzed by the Congressional Research Service, this specific exception to the general

2  withholding exemption permits for disclosure. William Krouse, Cong. Research Serv., RS22458,

3  *Gun Control: Statutory Disclosure Limitation on ATF Firearms Trace Data* (2009),

4  https://sgp.fas.org/crs/misc/RS22458.pdf (stating Tiahrt's exception "does not prohibit the release

5  of aggregate statistical data on illegal gun trafficking or statistical information on the U.S. firearms

6  industry"). Recognizing that previous Tiahrt Amendments had severely limited the authority of the

7  ATF to disclose trace data to the public, its language was "modified to authorize the release of

8  aggregate firearms trace data on illegal gun trafficking." *Id.* In essence, gun trace data was supposed

9  to become more accessible to journalists, academics and the public at large.[11] Thus, the ordinary

10  meaning and structure of the 2012 Rider do not justify withholding statistical gun data.

11    Beyond the plain language of the Amendment, the Government's argument for

12  nondisclosure is inconsistent with the purported aims of the original Amendment. The 2003 Tiahrt

13  Amendment was passed to address two main disclosure concerns: (1) possible privacy violations

14  privacy stemming from identifiable trace records and (2) the release of "sensitive law enforcement

15  information" that could jeopardize ongoing gun trafficking investigations. *See* H.R. Rep. No. 576,

16  108th Cong., 2d Sess. (2004); *see also Watkins v. ATF*, No. 04-800, 205 WL 2334277, at *1

17  (D.D.C. Sept. 24 1, 2005) (concluding the Amendment "sought to prevent the public release of

18  sensitive firearms trace data […] out of concern that such disclosures could jeopardize criminal

19  investigations"). Release of the aggregate gun trace data requested by Mr. Lindsay-Poland does not

20  undermine either of these concerns.

21    In enacting the most recent iteration of the Tiahrt Amendment in 2012, Congress recognized

22  how critically important the ATF's gun trace data is to the public. Thus, disclosure of this crucial

23  gun trace data in its aggregate form aligns with both the Congress' original and updated purpose of

24  the Tiahrt Amendment.

25

26

27  ───────────────

[11] Since the enactment of the 2012 Tiahrt Amendment, the ATF has represented that the only trace gun data released by the agency pursuant to FOIA was the data provided to CIR in accordance with the Ninth Circuit decision in *CIR v. DOJ*, 14 F.4th 916 (9th Cir. 2021).

28

### D.  <u>Withholding the Data Sought Impedes the Press and Harms the Public</u>

As explained above ATF reasserts incorrect interpretations of Exemption 3 and the Tiahrt Amendment. These interpretations are not only legally wrong, but they also unjustly burden the public's right to know. By blocking members of the press and public from accessing gun trace data, reporters are unable to analyze, understand and reveal crucial trends and patterns involving firearms in the United States. This also consequently prevents Congress and state legislatures from identifying and examining the specific information needed to shape and inform legislation that involve these issues.

As the Supreme Court has recognized, "[t]he Constitution specifically selected the press . . . to play an important role in the discussion of public affairs." *Mills v. Alabama*, 384 U.S. 214, 219 (1966). Moreover, "a press that is alert, aware, and free most vitally serves the basic purpose of the First Amendment. For without an informed and free press there cannot be an enlightened people." *N.Y. Times Co. v. United States*, 403 U.S. 713, 728 (1971) (Stewart, J., concurring). ATF's interpretation of Exemption 3 and the Tiahrt Amendment undermines these fundamental principles by incorrectly damming the flow of valuable information, found only in the ATF's trace database.

With the concerning rise in gun-related crimes across the nation, the American public has come to rely on local, national, and international news outlets to be informed on how this alarming trend has grown into a full-scale public health crisis. In turn, the press *should* be able to rely on ATF gun data in their reporting to explain and analyze the recent surge in gun violence and the flow of firearms. However, such reporting efforts are stymied when the data provided is a mere "glimpse" into firearm tracing.[12] By obstructing access to the limited aggregate gun-trace data held within the

---

[12] Jaclyn Diaz, *6 major takeaways from the ATF's first report in 20 years on U.S. gun crime*, NPR (Feb. 10, 2023), https://www.npr.org/2023/02/10/1153977949/major-takeaways-from-the-atf-gun-violence-report; *see e.g.*, Champe Barton, *New Data Suggests a Connection Between Pandemic Gun Sales and Increased Violence*, THE TRACE (Dec. 8, 2021), https://www.thetrace.org/2021/12/ atf-time-to-crime-gun-data-shooting-pandemic/; Jeff Asher, *Newly purchased firearms may play a role in US murder surge, data suggests*, THE GUARDIAN ( Sept. 30, 2022), https://www.guardian.com/us-news/2022/sep/30/us-murder-rate-increase-firearms; Maggie Prosser, *ATF Ballistics Data Network Takes aim at Gun Crime*, GOVERNMENT TECHNOLOGY (Nov. 29, 2022), https://rb.gy/6kwtn; Jeff Asher & Rob Arthur, *The Data Are Pointing to One Major Driver of America's Murder Spike*, THE ATLANTIC (Jan. 10, 2022), https://rb.gy/fjsi0; Cara Tabachnick, *Ghost*

---

1   ATF's database, the press is put at a severe disadvantage, exacerbating gun violence in the United

2   States and this detrimental cost is ultimately borne by the public.

3            In addition to supplying critical information to citizens to help them make informed

4   decisions about public health and safety, public access to the data also enables government action

5   and intervention.[13] Congress has the power "to secure needed information" in order to legislate, and

6   this "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the

7   legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 161, 174 (1927). This power is

8   "indispensable" because without information Congress would be shooting in the dark, unable to

9   legislate wisely or effectively, *Trump v. Mazars USA, LLP*, 140 S.Ct. 2019 (2020); *McGrain* 273

10  U.S. at 175 (1927), however in order to effectively yield this influence, Congress must be made

11  aware of where to focus its legislative attention and policymaking endeavors. *Comm. on the*

12  *Judiciary, U.S. House of Representatives v. McGahn*, 968 F.3d 755, 760 (D.C. Cir. 2020) (en

13  banc).[14] Investigative news organizations and media outlets have long played a part in identifying

14  matters of public concern that require government action.[15] Thus, access to public records for in

15  depth investigative reporting is essential not only for a well-informed society, but also a functioning

16  democracy. This kind of reporting is nearly impossible to achieve when laws, like Exemption 3 and

17

18

19  *gun use in U.S. crimes has risen more than 1,000% since 2017, federal report says*, CBS NEWS
    (Feb. 2, 2023), https://rb.gy/z76qf.

20  [13] Investigative journalists were the first to bring attention to the lack of available and dependable
    COVID tracking data in the US because the Center for Disease Control and Prevention didn't have

21  a centralized way of collecting data on new COVID cases and hospitalizations. *See* Artis Curiskis

22  and Kara Oehler, *The COVID Tracking* Project Part 1-3, Reveal (Apr. 15, 2023),
    https://revealnews.org/article/covid-tracking-project.

23  [14] "Congress cannot intelligently legislate without identifying national problems in need of
    legislative solution and relying on testimony and data that provide a deeper understanding of those

24  problems, their origins, and potential solutions." *McGahn*, 968 F.3d at 760.

25  [15] *See e.g.*, Dana Priest and Anne Hull, *Soldiers Face Neglect, Frustration At Army's Top Medical
    Facility*, The Washington Post (Feb. 18, 2007) (The *Post* conducted a 4-month investigation of the

26  substandard medical treatment wounded soldiers received at Walter Reed Army Medical Center and
    because of the ensuing two-part feature, the military instituted sweeping policy changes and the

27  Secretary of the Army and the two-star general in charge of the medical facility lost their jobs); *see
    also* Martin Linsky, *Impact: How the Press Affects Federal Policymaking*, W.W. Norton (1986).

28

1    the Tiahrt Rider are broadly misconstrued to effectively undermine the very access and transparency

2    the FOIA was intended to advance and protect.

3    **IV.    CONCLUSION**

4          For the foregoing reasons, CIR respectfully requests that the Court grant Plaintiff's Motion

5    for Summary Judgment and hold the Government to the binding Ninth Circuit precedent *amicus*

6    *curiae* secured years ago.

7

8    DATED: August 7, 2023                          Respectfully submitted,

9

10                                                  *s/ D. Victoria Baranetsky*
                                                    D. Victoria Baranetsky,
11                                                  Cal. Bar No. 311892
                                                    Dara Gray, Cal. Bar No. 349865
12                                                  THE CENTER FOR INVESTIGATIVE
                                                    REPORTING
13                                                  1300 65th Street, Suite 200
                                                    Emeryville, CA 94608
14                                                  Telephone: (510) 982-2890
                                                    Fax: (510) 849-6141
15                                                  vbaranetsky@revealnews.org

16                                                  Meghan Fenzel
                                                    Cal Bar No. 324139
17                                                  mfenzel@jassyvick.com
                                                    JASSY VICK CAROLAN LLP
18                                                  355 South Grand Avenue, Suite 2450
                                                    Los Angeles, California 90071
19                                                  Telephone: (310) 870-7048
                                                    Facsimile: (310) 870-7010
20
                                                    Counsel for *Amicus Curiae*
21                                                  CENTER FOR INVESTIGATIVE
                                                    REPORTING
22

23

24

25

26

27

28