James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

Attorney for Defendants
UNITED STATES DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO,
   FIREARMS AND EXPLOSIVES

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| JOHN LINDSAY-POLAND,<br><br>                 Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>                 Defendants. | Case No. 3:22-cv-7663-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**<br><br>Date: October 19, 2023, 1:30 p.m.<br><br>Location: Via Zoom<br><br>Judge: Hon. Edward M. Chen |

**INTRODUCTION**

Under the Freedom of Information Act (FOIA), plaintiff John Lindsay-Poland seeks firearm trace records from a database maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). He argues that such records are generally available through FOIA, despite an appropriations rider forbidding ATF "to disclose part or all of the contents" of the database and making "all such data . . . immune from legal process," 125 Stat. at 609–10, because Congress did not specifically cite FOIA Exemption 3 in that rider. *See* 5 U.S.C. § 552(b)(3)(B). As the Second Circuit has held, the plain text and statutory history of the Tiahrt Rider demonstrate that Congress intended it to bar most FOIA disclosures, notwithstanding the lack of an express citation to Exemption 3.

The Ninth Circuit has found an exception to that general prohibition for news-media representatives seeking certain kinds of statistical aggregate data, but Mr. Lindsay-Poland's FOIA request sought some non-aggregate data and did not demonstrate that he is a member of the news media. ATF's denial of his FOIA request should therefore be affirmed.

**ARGUMENT**

**A.     The Tiahrt Rider generally bars FOIA disclosure of FTS data.**

Since 2004, Congress has generally forbidden ATF to use appropriated funds "to disclose part or all of the contents of the Firearms Trace System database," and has made "all such data . . . immune from legal process." 118 Stat. at 2859. These prohibitions appeared in a series of "Tiahrt Riders," the last of which remains in effect. 125 Stat. at 609–10; *see Ctr. for Invest. Rept'g v. DOJ*, 14 F.4th 916, 927–32 (9th Cir. 2021); *Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 44–49 (2d Cir. 2020)

1   (compiling Tiahrt Riders).  In 2005, the Seventh Circuit held that the prohibitions
2   demonstrate an "unmistakable" congressional "intent to bar access" to FTS data, and that
3   the Tiahrt Rider containing them therefore "qualifies as an Exemption 3 statute and
4   substantively bars disclosure" of that data through FOIA. *City of Chicago v. U.S. Dep't of*
5   *Treasury*, 384 F.3d 777, 782 (7th Cir. 2005).  Every district court to consider the issue in
6   that period agreed.  *Skinner v. DOJ*, 744 F. Supp. 2d 185, 204 (D.D.C. 2010) (collecting
7   cases decided from 2005 through 2008); *Muhammad v. DOJ*, 2007 WL 433552, at *2 (S.D.
8   Ala. Feb. 6, 2007).

9         The first question in this case is whether those prohibitions still have the same effect
10  today.  In 2009, Congress amended the Freedom of Information Act, providing that later-
11  enacted statutes must "specifically cite[] to" Exemption 3 in order to come within its scope.
12  5 U.S.C. § 552(b)(3)(B).  Congress then re-enacted the Tiahrt Rider prohibitions, without
13  adding an express citation to Exemption 3.  The Second Circuit has held that those later
14  Tiahrt Riders continued to bar disclosure of FTS data through FOIA, just as the earlier
15  Riders had done. *Everytown*, 984 F.3d at 42.  The Ninth Circuit reserved the question over
16  the dissent of Judge Bumatay, who would have joined the Second Circuit. *Ctr. for Invest.*
17  *Rept'g v. DOJ*, 14 F.4th at 927, 932; *id.* at 942–43 (Bumatay, J., dissenting).

18        In its motion for summary judgment, ATF urged this Court to adopt the reasoning
19  of the Second Circuit and Judge Bumatay.  ATF suggested that the plain text and statutory
20  history of the Tiahrt Rider prohibitions show that Congress meant to prohibit most FOIA
21  disclosures of trace data.  Mot. at 10–11 (ECF No. 32-1 at 14–15).  And the agency
22  explained that the addition of an express-citation requirement to Exemption 3 could not
23  defeat the "plain import" or "fair implication" of those re-enacted prohibitions. *Id.* at 9

2

1  (ECF No. 32-1 at 13) (quoting *Dorsey v. United States*, 567 U.S. 260, 274 (2012)).  As the
2  Second Circuit has held, "when Congress employed the same antidisclosure language" that
3  it had used earlier, "Congress is best understood to have intended that language to continue
4  to exempt FTS data from FOIA disclosure." *Everytown*, 984 F.3d at 41.  Congress would
5  not "have reenacted the exact same language" in later years "in order to accomplish the
6  opposite result" of its earlier Tiahrt Riders.  *Id.* at 42.

7  In his cross-motion, Mr. Lindsay-Poland does not seem to take issue with the first
8  half of that argument.  He does not deny that the best reading of the Tiahrt Rider
9  prohibitions would bar most releases of trace data through FOIA, because such disclosures
10 would use appropriated funds and be made pursuant to legal process, and that the Seventh
11 Circuit and several district courts were thus right to hold that earlier Riders generally
12 prohibited FOIA disclosures of FTS data.  But he insists that when Congress re-enacted
13 those same prohibitions after amending Exemption 3, its "objective had changed."  Cross-
14 Mot. at 11 (ECF No. 35 at 16).  Although FOIA disclosures are still made with appropriated
15 funds pursuant to legal process, Mr. Lindsay-Poland argues that the Tiahrt Rider's
16 prohibitions no longer apply to them.

17 His argument seems to proceed in two parts.  First, Mr. Lindsay-Poland suggests
18 that the Tiahrt Rider prohibitions can be read to bar "the release of trace data outside of the
19 FOIA context"—through civil "discovery and subpoenas," for example—and would thus
20 be meaningful even if they did not apply to FOIA requests.  *Id.* at 9 (ECF No. 35 at 14).
21 And then Mr. Lindsay-Poland insists that because the Rider's prohibitions can be read in
22 that way, they should be, to avoid concluding that a later Congress implicitly repealed the
23 specific-citation requirement that an earlier Congress added to Exemption 3.  *Id.*  But his

3

1  saving construction does not make sense of the statute, and Exemption 3's express citation
2  requirement cannot bear the weight that he would give it.

3  On Mr. Lindsay-Poland's interpretation, the Tiahrt Rider would make trace data
4  freely available through FOIA, but not through civil subpoena or discovery.  That reading
5  presents both textual and structural difficulties.  The Rider provides that trace data "shall
6  be immune from legal process, [and] shall not be subject to subpoena or other discovery,"
7  125 Stat. at 610, but by reading "legal process" to be purely synonymous with "subpoena
8  or other discovery," Mr. Lindsay-Poland would make the first phrase superfluous.  And his
9  interpretation would also vitiate the prohibition on release of trace data through "subpoena
10 or other discovery."  Anyone who might have sought the data through those means could
11 just submit a FOIA request instead: to make trace data available through FOIA, but not
12 "subpoena or other discovery" is functionally no restriction at all.  The Tiahrt Rider cannot
13 bear the strained interpretation that Mr. Lindsay-Poland would impose.

14 Nor is there any reason to strain the text as he does.  The Supreme Court has
15 explained that "statutes enacted by one Congress cannot bind a later Congress, which
16 remains free to repeal the earlier statute, to exempt the current statute from the earlier
17 statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey*,
18 567 U.S. at 274.  "And Congress remains free to express any such intention either expressly
19 or by implication." *Id.*  To conclude that Congress has implicitly exempted the current
20 statute from an express-citation requirement, a court need only "assure [itself] that ordinary
21 interpretive considerations point clearly in that direction." *Id.* at 275.  The Court has used
22 phrases "such as 'plain import,' [and] 'fair implication,'" to describe "the need for that
23 assurance." *Id.*

4

1          The Supreme Court summarized this treatment of express-citation requirements in
2   *Dorsey*, drawing on earlier cases involving both the sentencing statute at issue there and
3   the Administrative Procedure Act. *Id.* at 274 (noting that "in a comparable context the
4   Court has emphasized that the Administrative Procedure Act's use of the word 'expressly'
5   does not require Congress to use any 'magical passwords' to exempt a later statute from
6   the provision" (quoting *Marcello v. Bonds*, 349 U.S. 302, 310 (1955))).  Courts have rightly
7   understood *Dorsey* to articulate a general approach to the situation in which a later-enacted
8   statute must be interpreted in light of an earlier express-citation requirement.  *E.g.*, *Mann*
9   *Constr., Inc. v. United States*, 27 F.4th 1138, 1144–45 (6th Cir. 2022).  Mr. Lindsay-Poland
10  would instead confine *Dorsey* to its facts and apply its dissenting opinion, in which Justice
11  Scalia insisted that "the 'fair implication' formulation understates the burden properly
12  imposed" on one "who would claim an implicit exception" from an express-citation
13  requirement, and that instead "the implication from the subsequently enacted statute must
14  be clear enough to overcome our strong presumption against implied repeals." 567 U.S. at
15  289–90 (Scalia, J., dissenting); *see* Cross-Mot. at 10 (ECF No. 35 at 15) (suggesting that
16  *Dorsey* "only addressed the standard for interpreting a particular statute on repealing
17  penalties from 1871" and arguing that the Court should here apply "the 'clear and manifest'
18  standard for finding an implied repeal").  But it was the *Dorsey* majority, and not its dissent,
19  that announced the Court's interpretive approach to express-citation requirements like the
20  one at issue here.
21         As the Second Circuit has rightly held, "the plain import of the 2012 Tiahrt Rider
22  exempts FTS data from FOIA disclosure, and that statute must be given effect regardless
23  of the specific-citation requirement" that now appears in FOIA Exemption 3. *Everytown*,

1   984 F.3d at 42; *accord Ctr. for Investigative Reporting*, 14 F.4th at 943 (Bumatay, J.,
2   dissenting) ("I would construe the . . . express-statement rule as merely a 'background
3   principle of interpretation,' and hold that the later-enacted Tiahrt Amendment controls."
4   (quoting *Dorsey*, 567 U.S. at 274)). In his cross-motion, Mr. Lindsay-Poland declines to
5   discuss that court's reasoning, and offers no basis to depart from it. The trace data at issue
6   here is thus exempt from disclosure unless this FOIA request comes within Exception C to
7   the Tiahrt Rider.
8   **B.      Exception C to the Tiahrt Rider does not apply.**
9           In its Exception C, the Tiahrt Rider allows ATF to disclose trace data through "the
10  publication of annual statistical reports on products regulated by [ATF] . . . or statistical
11  aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse,
12  felons, and trafficking investigations." 125 Stat. at 610. The Ninth Circuit has held that
13  this exception authorizes ATF to make FOIA disclosures of covered "statistical aggregate
14  data," *id.*, to "a reporter" or "a representative of the news-media," who "will make that data
15  generally known to the public," *Ctr. for Investigative Reporting*, 14 F.4th at 934 (citation
16  omitted). And the Ninth Circuit has suggested that courts should analyze claims to be a
17  representative of the news media as they do under 5 U.S.C. § 552(a)(4)(A)(ii). *Id.* at 934
18  n.14. As an alternative to his argument that the Tiahrt Rider simply does not prohibit FOIA
19  releases of trace data, Mr. Lindsay-Poland argues that he and his request come within its
20  Exception C.
21          But his FOIA request does not show that. As ATF noted in its motion, although
22  Mr. Lindsay-Poland claimed to "make this request as a representative of the news media,"
23  his FOIA request offered only a single sentence in support of that assertion. Mot. at 15–

18; *see* Siple Decl, Ex. A at 2. This is plainly "too conclusory" to demonstrate news-media status under 5 U.S.C. § 552(a)(4)(A)(ii). *See Cause of Action v. FTC*, 799 F.3d 1108, 1122 (D.C. Cir. 2015). And Mr. Lindsay-Poland did not press the issue at all in his administrative appeal. *See* Siple Decl., Ex. D. ATF was therefore justified in refusing to apply Tiahrt Rider Exception C to his request.

In his cross-motion, Mr. Lindsay-Poland does not seriously defend the adequacy of his submissions to the agency. Instead, he suggests that it is ATF's burden to show that he is not a representative of the news media—and that the Court should resolve the question *de novo* on the basis of material that he never presented to the agency. He is wrong on both counts.

Mr. Lindsay-Poland is claiming an exception to the general rule that the Tiahrt Rider bars disclosure of trace data through FOIA. He is only entitled to the exception if he is a news-media representative, a subject about which he knows far more than ATF.[1] And it is a "general rule of statutory construction, 'that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.'" *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 365 (3d Cir. 2015) (quoting *Dixon v. United States*, 548 U.S. 1, 9 (2006)); *accord Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 130 (2d Cir. 2001) (noting that "all else being equal, the burden is better placed on the party with easier access to relevant information"). Because Mr.

---

[1] Mr. Lindsay-Poland suggests that the Court should ask "whether the release of the information to the requester will eventually result in that information becoming 'generally known to the public,'" Cross-Mot. at 13 (ECF No. 35 at 18) (quoting *Ctr. for Investigative Reporting*, 14 F.4th at 935), and not whether he is a representative of the news media. But he offers no argument that he satisfies this vague standard for reasons apart from his news-media status, nor any framework through which the Court could conduct this amorphous inquiry.

Lindsay-Poland is uniquely positioned to know whether he is a member of the news media, it was his obligation to present that evidence.

And he was obliged to present it to the agency, not for the first time in district court. The Ninth Circuit has suggested that courts should look to 5 U.S.C. § 552(a)(4)(A)(ii) when "defining who counts as a representative of the news-media" for the purposes of Tiahrt Rider Exception C. *Ctr. for Investigative Reporting*, 14 F.4th at 934 n.14 (internal quotation omitted). Under that statutory provision, certain fees cannot be charged to FOIA requesters who show that they are "a representative of the news media," which the statute defines at length. *See* Mot. at 15 (ECF No. 32-1 at 19). The statute specifies certain kinds of evidence that would demonstrate this status: for example, a "publication contract" between a "freelance journalist" and a "news-media entity." 5 U.S.C. § 552(a)(4)(A)(ii). And in an adjacent provision the statute provides that, in challenges to an agency's denial of news media status, "the court's review of the matter shall be limited to the record before the agency." *Id.* § 552(a)(4)(A)(vii). It is therefore a requester's obligation to present sufficient evidence of news media status to the agency, and a reviewing court's role to determine the sufficiency of this evidence "de novo." *Id.* When recommending this statutory scheme for the resolution of claims to news media status under Tiahrt Rider Exception C, the Ninth Circuit approvingly cited a D.C. Circuit case that rejected a requester's submission as "too conclusory," as Mr. Lindsay-Poland's was here. *Cause of Action*, 799 F.3d at 1122; *see Ctr. for Investigative Reporting*, 14 F.4th at 934 n.14.

In his FOIA request, Mr. Lindsay-Poland offered ATF a single sentence in support of his assertion that he was a news media representative; he dropped the issue in his administrative appeal. Now he asks the Court to order disclosure on the basis of a

declaration full of evidence that he could have presented to the agency, but chose not to. And in defense of this practice he cites a single case from 1984, which did not consider evidence submitted by plaintiff for the first time in district court. Cross-Mot. at 13 (ECF No. 35 at 18) (citing *Powell v. U.S. Dep't of Justice*, 584 F. Supp. 1508, 1515 (N.D. Cal. 1984)). If the Court determines that this evidence should be considered, it should remand the case to ATF to supplement the record and issue a revised determination.

ATF explained in its motion that "[i]f the Court determined that ATF must release all 'statistical aggregate data' responsive to this FOIA request, ATF would search the FTS database and withhold any non-aggregate data produced by that search." Mot. at 19 n.5 (ECF No. 32-1 at 23). Mr. Lindsay-Poland does not dispute that this would be the proper procedure, but argues that ATF's example of covered information that is likely to be non-aggregate—ZIP code data identifying particular Federal Firearms Licensees—would in fact be aggregate data. Cross-Mot. at 16 (ECF No. 36 at 21). The Court need not resolve that issue before ATF conducts a search and determines with precision what, if any, non-aggregate data is returned by Mr. Lindsay-Poland's request. But a request for the number of firearms traced from a particular country in a particular year to a particular ZIP code with only one Federal Firearms Licensee is unlikely to produce "statistical aggregate data" within the meaning of the Tiahrt Rider.

Finally, Mr. Lindsay-Poland concludes his cross-motion with a brief, novel argument: that Exception C to the Tiahrt Rider actually requires ATF to release covered "statistical aggregate data" to all requesters, regardless of whether they are news media representatives or would otherwise make the information disclosed to them known to the broader public. Cross-Mot. at 16–17 (ECF No. 36 at 21–22). His argument fails. As

9

explained at length above and in ATF's motion for summary judgment, the Tiahrt Rider imposes a general, non-discretionary prohibition on the disclosure of trace data.  Exception C then allows for "the publication of" certain "statistical aggregate data."  125 Stat. at 610.  The Second Circuit has held that this exception only authorizes ATF itself to publish such data.  *Everytown*, 984 F.3d at 44.  The Ninth Circuit has held that disclosure to some FOIA requesters, but not others, also constitutes "publication."  *Ctr. for Investigative Reporting*, 14 F.4th at 934.  On the Ninth Circuit's interpretation of Exception C, which of course governs here, the Tiahrt Rider instructs ATF to withhold statistical aggregate trace data from FOIA requesters unless release to them would constitute "publication."  And that instruction requires that the data be withheld from other requesters "in such a manner as to leave no discretion on the issue," within the meaning of Exception 3.  5 U.S.C. § 552(b)(3).

## CONCLUSION

For the reasons set forth above and in ATF's summary judgment motion, the agency is entitled to summary judgment affirming its denial of Mr. Lindsay-Poland's FOIA request.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov

                Telephone: (202) 305-7632
                Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: August 25, 2023