United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN LINDSAY-POLAND,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

        Defendants.

Case No. 22-cv-07663-EMC

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

Docket Nos. 32, 35

       Plaintiff John Lindsay-Poland filed a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain certain records related to firearms from Defendants United States Department of Justice ("DOJ") and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). After Defendants denied Plaintiff's initial request and subsequent appeal, Plaintiff filed the instant action. Now pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court hereby **GRANTS** in part Plaintiff's motion, **DENIES** in part Defendants' motion, and remands for further proceedings consistent with this decision. The Court also stays further proceedings in this suit pending the remand.

## I.      FACTUAL & PROCEDURAL BACKGROUND

       The evidence of record reflects as follows.

       ATF is a criminal and regulatory enforcement agency within DOJ. *See* Siple Decl. ¶ 3. ATF's responsibilities include enforcing federal firearms laws such as the Gun Control Act of 1968 ("Gun Control Act"), which, *inter alia*, established a licensing system for persons or entities engaged in manufacturing, importing, dealing, and collecting firearms. Licensees are referred to as Federal Firearm Licensees or "FFLs." *See* Siple Decl. ¶ 3.

United States District Court
Northern District of California

1    Pursuant to the Gun Control Act, the Attorney General is authorized to administer firearms

2    tracing. "'Tracing' a firearm is the systematic tracking of a recovered firearm from its

3    manufacturer or importer, through its subsequent introduction into the distribution chain

4    (wholesaler/retailer), to identify an unlicensed purchaser." Siple Decl. ¶ 5. Law enforcement can

5    use trace data "to link a suspect to a firearm-related criminal investigation, to identify any

6    potential firearms traffickers, and to detect patterns in the sources and kinds of firearms that are

7    used in a crime." Siple Decl. ¶ 6.

8    The Attorney General has delegated the authority to trace firearms to ATF. *See* Siple Decl.

9    ¶ 4. In conjunction with this responsibility, ATF maintains a law enforcement information

10   database known as the Firearms Tracing System ("FTS"). *See* Siple Decl. ¶ 4. Trace data is

11   maintained in the FTS and "includes the 8-digit identification number of the FFLs involved in the

12   sale or transfer of the firearm, along with any information regarding the retail purchaser of the

13   firearm." Siple Decl. ¶ 6.

14   In March 2021, Plaintiff submitted a FOIA request to ATF via an online form. *See* Siple

15   Decl. ¶ 11 & Ex. A (FOIA request); *see also* Compl. ¶ 66. Plaintiff sought, in essence,

16   information from the FTS. The FOIA request stated in relevant part as follows:

18   I request records based on a database query containing data on
19   firearms recovered in Mexico, Guatemala, Honduras, and El
     Salvador, and traced by the ATF, since Dec. 31, 2014. From this, I
     request database query results with the following data:

20   1.  Number of firearms traced, and with the following
21       disaggregation, for each country where firearm was recovered
         and each year:

22   • state of FFL where firearm was purchased
23   • county of FFL where firearm was purchased
     • zip code of FFL where firearm was purchased
24   • type of firearm (rifle, shotgun, pistol, revolver, other)
     • caliber of firearm
25   • make of firearm

26   2.  Number of buyers to which recovered firearms were traced as
         purchases, by year, by country where firearm was recovered, and
27       by county of purchase

28   3.  Number of FFLs to which recovered firearms were traced as
         purchases, with the following disaggregations for each country

2

and year of purchase:

- county and state of purchase
- type of firearm (rifle, shotgun, pistol, revolver, other)
- caliber of firearm.

Siple Decl., Ex. A.

In his FOIA request, Plaintiff also stated that he was seeking the information "as a representative of the news media. I have published extensively on issues related to firearms trafficking in the Americas, including widely cited research reports, op-eds in publications such as the *Los Angeles Times*, a documentary film, and a web site dedicated to the issue." Siple Decl., Ex. A (underlining in original). The underlined items were hyperlinks. *See* Siple Decl. ¶ 19. For instance, the hyperlink for the *Los Angeles Times* led to an op-ed piece in which Plaintiff was the co-author. *See* Siple Decl. ¶ 21. The hyperlink for the documentary film led to a firm co-directed by Plaintiff. *See* Siple Decl. ¶ 22. And the hyperlink for the website led to the website for Stop US Arms to Mexico (stopusarmstomexico.org), an organization for which Plaintiff is the coordinator. *See* Siple Decl. ¶ 23; Siple Decl., Ex. A.

Finally, Plaintiff requested a fee waiver. Although FOIA provides for a limit on fees when records are sought by a representative of the news media for noncommercial use (providing for "reasonable standard charges for document duplication"), 5 U.S.C. § 552(a)(4)(A)(ii)(II),[1] Plaintiff

---

[1] Section 552(a)(4)(A)(ii) provides:

> In this clause, the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities. A freelance journalist shall be regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the

United States District Court
Northern District of California

1    asked for a complete waiver of fees pursuant to § 552(a)(4)(A)(iii) (providing for no charge or a

2    reduced charge "if disclosure of the information is in the public interest because it is likely to

3    contribute significantly to public understanding of the operations or activities of the government

4    and is not primarily in the commercial interest of the requester"). *See* Siple Decl., Ex. A ("I

5    request a waiver of all costs associated with fulfilling this submission pursuant to 5 U.S.C. [§]

6    552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). Disclosure of the requested records will contribute

7    significantly to public's understanding of the operations or activities of the government.").

8              In May 2021, ATF acknowledged receipt of Plaintiff's FOIA request. *See* Siple Decl., Ex.

9    B (letter). In the same letter, ATF stated: "We have determined that you are a non-media, non-

10   commercial requester pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(III)." Siple Decl., Ex. B.

11             Several months later, in December 2021, ATF issued its ruling on Plaintiff's FOIA request.

12   It stated:

> You have requested material that ATF is required to maintain
> pursuant to the Gun Control Act (GCA) and/or is contained in ATF
> Firearms Trace System database. This information is exempt from
> disclosure pursuant to Exemption (b)(3) of the FOIA.
> Exemption (b)(3) of the FOIA permits the withholding of
> information prohibited from disclosure by another statute only if one
> of two disjunctive requirements are met: the statute either (A)
> requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue, *or* (B) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld. Thus, a statute falls within the exemption's
> coverage if it satisfies any one of its disjunctive requirements.
>
> Beginning in 2003, Congress placed restrictions on ATF's
> disclosure of certain GCA related information. In short, ATF can
> only provide certain GCA data to a law enforcement agency or a
> prosecutor solely in connection with a criminal investigation or
> prosecution. Beginning in Fiscal Year 2006 [with the Tiahrt Rider],
> Congress included a provision within each iteration of the restriction
> on disclosure that effectively made that restriction permanent.
>
> The most recent iteration of these various restrictions was included
> in ATF's 2012 Appropriation Bill, Public Law 112-55, 125 Stat. 552

---

journalist is actually employed by the entity. A publication contract
would present a solid basis for such an expectation; the Government
may also consider the past publication record of the requester in
making such a determination.

5 U.S.C. § 552(a)(4)(A)(ii).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1
2
3
4

[the current version of the Tiahrt Rider].  Some of the information in the requested records falls within this restriction.  Because the Fiscal Year 2006 through 2008 restrictions satisfy all the requirements of FOIA Exemption (b)(3), and the 2012 language [in the Tiahrt Rider] . . . carries forth those restrictions, I am withholding the trace data pursuant to 5 U.S.C. § 552 (b)(3) and Public Law 112-55, 125 Stat. 552.

5    Siple Decl., Ex. C (letter).  ATF's decision did not address the fact that the Tiahrt Rider contained

6    certain exceptions – *i.e.*, allowing for disclosure in certain circumstances.

7        In March 2022, Plaintiff appealed the ATF's decision.  *See* Siple Decl. ¶ 16 & Ex. D

8    (letter).  In the appeal, Plaintiff argued, *inter alia*, that the Tiahrt Rider did not meet the statutory

9    requirements for Exemption (b)(3) of FOIA.  Plaintiff also argued that, even if the Tiahrt Rider did

10   meet the statutory requirements, disclosure was still warranted because the Tiahrt Rider contained

11   an exception (Exception (C)) allowing for disclosure of statistical aggregate data.

12       In October 2022, ATF denied Plaintiff's appeal.  It reiterated that it had "properly withheld

13   [the] information ]sought] in full because it is protected from disclosure under the FOIA pursuant

14   to 5 U.S.C. § 552(b)(3).  This provision concerns matters specifically exempted from release by a

15   statute other than the FOIA (in this instance, [the Tiahrt Rider] which prohibits ATF from using

16   appropriated funds to disclose firearms database information)."  Siple Decl., Ex. E (letter).  The

17   appeal did not address whether Exception (C) to the Tiahrt Rider applied.

18       Having exhausted his administrative remedies, Plaintiff filed this lawsuit, seeking to

19   compel production of the requested documents.

20       In support of their motion for summary judgment, Defendants have submitted a declaration

21   from Adam Siple, Chief of ATF's Information and Privacy Governance Division.  Mr. Siple's

22   declaration addresses for the first time Plaintiff's contention that, even if the Tiahrt Rider applies,

23   ATF should still have disclosed the records sought under Exception (C) to the Rider.  *See* Siple

24   Decl.

25       Exception (C) to the Rider states that the Rider

26
27
28

"shall not be construed to prevent: . . . (C) **the publication of** annual statistical reports on products regulated by the [ATF], including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or **statistical aggregate data regarding firearms traffickers and**

United States District Court
Northern District of California

1

**trafficking channels, or firearms misuse, felons, and trafficking investigations**."

2

*Center for Investigative Reporting v. United States DOJ*, 14 F.4th 916, 933 (9th Cir. 2021)

3

[hereinafter *CIR*] (quoting 123 Stat. at 3129; emphasis added).  According to Mr. Siple, Plaintiff's

4

FOIA request did not fall within the scope of Exception (C) because it did not establish the

5

element of "publication" – specifically, because Plaintiff failed to establish that he is a news media

6

representative.  *See* Siple Decl. ¶ 24 (stating that "Plaintiff's FOIA request did not demonstrate

7

that he is a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii), which the Ninth

8

Circuit has suggested [in *CIR*] should guide ATF's application of Exception C to the 2012 Tiahrt

9

Rider"); *see also CIR*, 14 F.4th at 934 (stating that "news media organizations are precisely the

10

sort of 'representative[s] of the public' through which individuals and entities commonly

11

distribute information to the public").

12

Mr. Siple added that, to the extent Plaintiff sought the zip code of any FFL where a traced

13

firearm was purchased, there was an independent problem.  Exception (C) allows only for

14

disclosure of "aggregate data," but at least in some instances revealing a "FFL's zip code would

15

reveal the identities of individual FFLs."  Siple Decl. ¶ 30.

16

ATF publishes on its website a monthly list of all FFLs. *See*
https://www.atf.gov/firearms/listing-federal-firearms-licensees.  As

17

of June 2023, this includes monthly reports dating back to January
2014.  Included in each of the publicly released data sets is the

18

FFL's zip code.  As of May 31, 2023, there were 78,593 licensees
with a license type of 1, 2, or 7.  The holders of any of these three

19

license types are authorized to conduct retail firearm sales and are
thus most likely to be involved in a traced crime gun.  Of the 78,593

20

FFLs with a license type of 1, 2, or 7, 13,544 FFLs (or
approximately 17 percent of all FFLs with these license types)

21

associate with a zip code in which only one (8,818) or two (4,726)
FFLs have a place of business.  Accordingly, by identifying the zip

22

codes to which recovered firearms were traced, there is a statistically
significant chance that individual FFLs will be revealed.  As such,

23

this data point cannot be considered aggregate data.

24

Siple Decl. ¶ 31.

25

In turn, in support of his motion for summary judgment, Plaintiff has submitted a

26

declaration in which he provides more detail about his work "as a journalist, researcher and

27

analyst."  Lindsay-Poland Decl. ¶ 3.  As reflected in the declaration, prior to his current job,

28

Plaintiff was an editor and staff writer for Latin-America-focused publications, and he has

6

1    dedicated much of his 30-year career to researching and writing human rights and U.S. security

2    policy in Latin America.  *See* Lindsay-Poland Decl. ¶ 4.  Currently, Plaintiff serves as the

3    coordinator of Stop U.S. Arms to Mexico, an organization that analyzes and reports on the flow of

4    firearms to Mexico and other countries.  *See* Lindsay-Poland Decl. ¶ 3.  Part of his present work

5    includes communicating with local experts and human sources, reviewing relevant open-source

6    intelligence sources, and gathering information from sources and disseminating it to the public.

7    *See* Lindsay-Poland Decl. ¶ 5.

8                                      **II.        DISCUSSION**

9    A.       Legal Standard

10           Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

11   [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

12   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is

13   genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

14   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "The mere existence of a

15   scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

16   reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

17   must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

18   are to be drawn in the nonmovant's favor.  *See id.* at 255.

19           The Ninth Circuit has observed that "[m]ost FOIA cases are resolved by the district court

20   on summary judgment, with the district court entering judgment as a matter of law," although, "if

21   there are genuine issues of material fact in a FOIA case, the district court should proceed to a

22   bench trial or adversary hearing."  *Animal Legal Def. Fund v. United States FDA*, 836 F.3d 987,

23   989-90 (9th Cir. 2016).  It is a common practice for the government to submit an agency affidavit

24   (or declaration) to explain the search done for documents and/or why there any documents were

25   not disclosed.  *Cf. Hamdan v. United States DOJ*, 797 F.3d 759, 772 (9th Cir. 2015) ("[W]e . . .

26   give considerable deference to agency affidavits made in apparent good faith where the affidavits

27   reasonably describe the justifications for nondisclosure and show that the content withheld falls

28   within one of FOIA's exemptions.").  A court may rely on an affidavit "'so long as the affiants are

United States District Court
Northern District of California

1    knowledgeable about the information sought and the affidavits are detailed enough to allow the

2    court to make an independent assessment of the government's claim.'" *Lane v. DOI*, 523 F.3d

3    1128, 1135 (9th Cir. 2008); *see also id.* at 1136 (adding that, if "the court finds that the

4    government affidavits are 'too generalized,' it may examine the disputed documents in camera to

5    make a 'first-hand determination of their exempt status'"). If an agency affidavit is deficient, then

6    a court may ask the government to supplement the affidavit or it may remand to the agency. *See*

7    *Frost v. United States DOJ*, No. 17-cv-01240-JCS, 2018 U.S. Dist. LEXIS 57767, at \*27-28 (N.D.

8    Cal. Apr. 4, 2018); *see also Nw. Coal for Alternatives to Pesticides v. EPA*, 254 F. Supp. 2d 125,

9    133 (D.D.C. 2003) (noting that a remand to the agency is appropriate where a court cannot

10   properly perform judicial review because the agency has not sufficiently explained the reasons for

11   its decision); *cf. People for the Ethical Treatment of Animals, Inc. v. Bur. of Indian Affairs*, 800 F.

12   Supp. 2d 173, 178 (D.D.C. 2011) (stating that, "in a FOIA case, even if defendant had failed in

13   obtaining summary judgment because of an inadequate search, it does not necessarily follow that

14   plaintiff prevails[;] [r]ather, the usual remedy is for the Court to remand to the agency to expand

15   its search or to provide more detailed declarations regarding the scope of the search").

16   B.    FOIA

17          FOIA is animated by "the fundamental principle of public access to Government

18   documents." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). It is "broadly

19   conceived," and "disclosure, not secrecy" is its dominant objective. *Id.* at 151-52. At the same

20   time, Congress has exempted some information "under clearly delineated statutory language." *Id.*

21   at 152 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). These exemptions are

22   "limited" and "must be narrowly construed." *Rose*, 425 U.S. at 361. "Furthermore, 'the burden is

23   on the agency to sustain its action.'" *John Doe Agency*, 493 U.S. at 152 (citing 5 U.S.C. §

24   552(a)(4)(B)). In other words, "[g]iven FOIA's overarching purpose, 'the strong presumption in

25   favor of disclosure places the burden on the agency to justify the withholding of any requested

26   documents.'" *Civil Beat Law Ctr. for the Pub. Int., Inc. v. Centers for Disease Control &*

27   *Prevention*, 929 F.3d 1079, 1084 (9th Cir. 2019) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164,

28   173 (1991)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In the case at bar, ATF denied Plaintiff's FOIA request, citing Exemption (b)(3) of FOIA

2  and the 2012 Tiahrt Rider.  Under Exemption (b)(3) of FOIA, disclosure is not required for a

3  matter

4            specifically exempted from disclosure by statute . . . if that statute –

5       (A)
              (i)    requires that the matters be withheld from the public
6                    in such a manner as to leave no discretion on the
                     issue; or
7              (ii)   establishes particular criteria for withholding or
                     refers to particular types of matters to be withheld;
8                    and

9       (B)    if enacted after the date of the OPEN FOIA Act of 2009,
               specifically cites to this paragraph.
10

11  5 U.S.C. § 552(b)(3).  The OPEN FOIA Act "added the requirement in subsection (b)(3)(B),"

12  *Whitaker v. DOC*, No. 5:17-cv-192, 2017 U.S. Dist. LEXIS 210967, at *11 (D. Vt. Dec. 20, 2017)

13  – *i.e.*, requiring that a statute specifically cite to Exemption (b)(3).  The purpose of the requirement

14  was to "ensure an open and deliberative process in Congress by providing for related legislative

15  proposals to explicitly state such required citations . . ." 111 S. 612 (2009).

16      In the instant case, ATF cited the 2012 Tiahrt Rider as the statute that relieved it of its

17  obligation to disclose material under FOIA.[2]  Under the 2012 Tiahrt Rider,

18            no funds appropriated under this or any other Act may be used to
              disclose part or all of the contents of the Firearms Trace System
19            database maintained by the National Trace Center of the Bureau of
              Alcohol, Tobacco, Firearms and Explosives or any information
20            required to be kept by licensees pursuant to section 923(g) of title
              18, United States Code, or required to be reported pursuant to
21            paragraphs (3) and (7) of such section . . .

22  except that

23            [the Tiahrt Rider] shall not be construed to prevent . . . (C) the
              publication of annual statistical reports on products regulated by the
24            Bureau of Alcohol, Tobacco, Firearms and Explosives, including
              production, important, and exportation by each licensed importer (as
25            so defined) and licensed manufacturer (as so defined), or statistical

26
_____

27  [2] In the present case, there is no dispute that the only relevant statute applicable here  is the 2012
    Tiahrt Rider, which is an unaltered version of the 2010 Rider.  The Ninth Circuit has expressly
28  held that the 2010 Rider "impliedly repealed the 2005 and 2008 Riders [*i.e.*, earlier versions of the
    Rider] in full." *CIR*, 14 F.4th at 927.

9

1    aggregate data regarding firearms traffickers and trafficking
     channels, or firearms misuse, felons, and trafficking investigations .

2    . . .

3    Pub. L. No. 112-55, 125 Stat. 552 (2012).

4        As reflected in the parties' cross-motions for summary judgment, the instant case presents

5    two issues for the Court to resolve: (1) whether the 2012 Tiahrt Rider exempts the information

6    Plaintiff seeks from disclosure under FOIA (*i.e.*, whether Exemption (b)(3) of FOIA applies), and

7    (2) if so, whether Exception C of the 2012 Tiahrt Rider nevertheless applies such that the

8    information should still be disclosed to Plaintiff.

9    C.    Exemption (b)(3) of FOIA

10       There is limited authority on the issue of whether Exemption (b)(3) of FOIA applies where

11   the Tiahrt Rider is implicated.  The only circuit court that appears to have directly addressed the

12   issue is the Second Circuit.  In *Everytown for Gun Safety Support Fund v. Bureau of Alcohol,*

13   *Tobacco, Firearms & Explosives*, 984 F.3d 30 (2d Cir. 2020), the Second Circuit held that the

14   Tiahrt Rider exempted FTS data from FOIA disclosure pursuant to Exemption (b)(3).  *See id.* at

15   38.  The court acknowledged that the Rider failed to expressly cite Exemption (b)(3) as required

16   by FOIA.  But it stated that,

17              [w]hen Congress enacted the 2012 Tiahrt Rider, . . . it was not
                bound to follow the specific-citation requirement it had adopted in
18              the OPEN FOIA Act.  When enacting subsequent legislation,
                Congress "remains free . . . to exempt the current statute from the
19              earlier statute, to modify the earlier statute, or to apply the earlier
                statute but as modified."  And when it adopts the later statute,
20              Congress "remains free to express any such intention either
                expressly or by implication as it chooses."
21
                Accordingly, the specific-citation requirement of the OPEN FOIA
22              Act does not dictate the outcome in this case.  It provides a
                "background principle of interpretation" of which we assume
23              Congress is "aware . . . when it enacts new . . . statutes."  But if
                "ordinary interpretive considerations" nevertheless indicate that
24              Congress intended to depart from the background principle when it
                adopted the later statute, we must give that statute the full effect that
25              its "plain import or fair implication" demands.

26   *Id.* at 39 (quoting *Dorsey v. United States*, 567 U.S. 260, 274-75 (2012)).  The court rejected the

27   plaintiff's contention that a more rigorous standard for an implied repeal applied.  *See id.* at 42

28   (citing *Maine Community Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (stating

United States District Court
Northern District of California

10

1    that "repeals by implication are not favored and are a rarity[:] [p]resented with two statutes, the

2    Court will regard each as effective – unless Congress' intention to repeal is clear and manifest or

3    the two laws are irreconcilable") (internal quotation marks omitted).

4           The Second Circuit concluded that ordinary interpretive considerations did clearly indicate

5    that the plain import or fair implication of the Rider was to exempt FTS data from FOIA

6    disclosure.  First, the court looked at the text of the Rider on its face.

> The text of the rider . . . provides that no appropriated funds may be
> used to disclose "the contents of the Firearms Trace System
> database" and other specified information collected by the ATF –
> subject to exceptions for law enforcement, national security, and
> intelligence uses – and that "all such data shall be immune from
> legal process."  Because the ATF operates only with appropriated
> funds, and because FOIA disclosure occurs subject to legal process,
> the rider exempts FTS data from FOIA disclosure.

12   *Everytown*, 984 F.3d at 40.

13          Second, the court considered the history and prior text of the Rider:

> The enactment of the 2012 Tiahrt Rider marked the eighth time that
> Congress passed such a rider in the decade spanning 2003 to 2012.
> Congress passed the first Tiahrt Rider after the Seventh Circuit
> affirmed a district court decision requiring FOIA disclosure of FTS
> data.  It strengthened the rider's antidisclosure language to include
> the phrase "all such data shall be immune  from legal process," after
> the Seventh Circuit continued to maintain that FTS data was subject
> to FOIA disclosure.  The Seventh Circuit then recognized that
> Congress's "intent to bar access to [FTS] information is
> unmistakable."  Congress continued to use this antidisclosure
> language throughout the 2000s and courts uniformly held that the
> Tiahrt Riders exempted FTS data from FOIA disclosure.

21   *Id.* at 40-41.  The Second Circuit then pointed out that,

> [b]ecause the 2009 Tiahrt Rider applied to "fiscal year 2009 *and
> thereafter*," that disclosure exemption would remain in effect today
> if Congress had not passed a subsequent Tiahrt Rider, and it
> unquestionably did not require a citation to Exemption Three.

> When Congress employed the same antidisclosure language in the
> 2010 Tiahrt Rider and later the 2012 Tiahrt Rider, Congress is best
> understood to have intended that language to continue to exempt
> FTS data from FOIA disclosure [*i.e.*, in spite of the failure to cite
> Exemption (b)(3) of FOIA].  The interceding enactment of the
> OPEN FOIA Act's specific-citation requirement does not overcome
> the elementary principle that Congress uses the same language to
> accomplish the same objective.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* at 41 (emphasis in original); *see also Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 175 (D.D.C. 2014) ("Congress's decision to incorporate similar language into appropriations bills after 2009 demonstrates its intent to continue the disclosure prohibition.")

Unlike the Second Circuit, the Ninth Circuit has not squarely addressed the issue now before the Court. In *CIR*, the plaintiff was an organization that "participated in the national debate surrounding guns in America." *CIR*, 14 F.th at 922. It filed a FOIA request asking ATF for "records depicting the '[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present.'" *Id.* ATF took the position that the Tiahrt Rider barred disclosure of the information; it also asserted that "FOIA did not require [it] to run [the] search [requested by the plaintiff] in the FTS database because such a query would require it to create a new agency record." *Id.*

The majority expressly declined to address the issue of whether the Rider applied in the first instance due to its failure to refer to Exemption (b)(3) of FOIA. It noted:

> [T]his is not the case to address that question, for the issue is clearly waived. Neither party raised this point before the district court, and no party or amici discussed this issue in briefing on appeal. Indeed, the parties did not "frame[] this case as [] whether the Tiahrt Amendment or the OPEN FOIA Act governs."

*Id.* at 932.

In a footnote, however, the majority implied the Rider did not repeal the OPEN FOIA Act. *See id.* at 932 n.7. Specifically, the majority stated as follows:

> because the 2010 and 2012 Tiahrt Riders do not explicitly purport to repeal the OPEN FOIA Act, this issue at least implicates the following: (1) whether there exists an "irreconcilable conflict" between the Rider and the OPEN FOIA Act, , *see, e.g.*, *In re Glacier Bay*, 944 F.2d 577, and (2) the Supreme Court's "especially strong" aversion to implied repeals of standalone laws through appropriation riders. *Me. Comty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (internal quotation marks and citation omitted).

*Id.* Based on (1) above, the majority implicitly rejected the dissent's suggestion that a more

United States District Court
Northern District of California

1    relaxed standard for implied repeals applied (*i.e.*, under *Dorsey*)[3] and instead favored the typical

2    and more rigorous standard for implied repeals as used in *Glacier Bay* and *Maine Community*.  In

3    *Maine Community*, the Supreme Court noted that "repeals by implication ae not favored" and in

4    fact are a "rarity.  Presented with two statutes, the Court will regard each as effective – unless

5    Congress' intention to repeal is clear and manifest, or the two laws are irreconcilable."  *Me.*

6    *Comty.*, 140 S. Ct. at 1323 (internal quotation marks omitted).[4]  As to (2), the majority implicitly

7    suggested that an implied repeal based on an appropriations rider in particular (as opposed to a

8    statute) should be viewed with some skepticism.  *Cf. Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 190

9    (1978) (noting that "both substantive enactments and appropriations measures are 'Acts of

10   Congress,' but the latter have the limited and specific purpose of providing funds for authorized

11   programs," and, "[w]hen voting on appropriations measures, legislators are entitled to operate

12   under the assumption that the funds will be devoted to purposes which are lawful and not for any

13   purpose forbidden"), *superseded by statute on other grounds*.

14        Judge Bumatay, however, indicated in his dissent that he agreed with some of the Second

15   Circuit's reasoning in *Everytown*, writing that he believed Exemption (b)(3) was "merely a

16   'background principle of interpretation'" and that the 2012 Tiahrt Rider controlled.  *See CIR*, 14

17   F.4th at 944 (Bumatay, J., dissenting).  On the other hand, it could be argued that Congress had

18   every opportunity to add language to the 2012 Tiahrt Rider referencing Exemption (b)(3) if it

19   wanted to insure the applicability of Exemption (b)(3).  It did not.

20        At this juncture of the proceedings, the Court need not resolve the issue of whether

21   Exemption (b)(3) applies because the bulk of the pending summary judgment motions can be

22   resolved on other grounds.  Specifically, even if Defendants are correct that Exemption (b)(3)

23   applies, that in and of itself does not bar disclosure because Exception (C) of the Tiahrt Rider

24   provides an independent basis for disclosure, at least as to most of the information sought by

25   Plaintiff.  As discussed below, binding Ninth Circuit precedent – namely, the *CIR* decision –

26

27   [3] As indicated above, the Second Circuit in *Everytown* used the more relaxed standard in *Dorsey*.

28   [4] Plaintiff here fairly argues that the two laws are not irreconcilable since the Rider could have application to disclosures other than FOIA.

1    dictates this result.

2    D.      Exemption (C) of Tiahrt Rider

3           As noted above,

4                  [the Tiahrt Rider] shall not be construed to prevent . . . (C) **the
                   publication of** annual statistical reports on products regulated by the
5                  Bureau of Alcohol, Tobacco, Firearms and Explosives, including
                   production, important, and exportation by each licensed importer (as
6                  so defined) and licensed manufacturer (as so defined), or **statistical
                   aggregate data regarding firearms traffickers and trafficking
7                  channels, or firearms misuse, felons, and trafficking
                   investigations** . . . .
8

9    Pub. L. No. 112-55, 125 Stat. 552 (2012) (emphasis added).  Defendants argue that Exception (C)

10   does not apply to the instant case for two reasons: (1) Plaintiff is not a member of the news media

11   and therefore disclosure of information to him will not lead to any "publication"; and (2) even if

12   the "publication" requirement is not at issue, at least some of the information sought by Plaintiff –

13   specifically, the zip code information – does not constitute "aggregate" data.

14          1.      Publication

15          In *CIR*, the Ninth Circuit expressly addressed what the term "publication" means for

16   purposes of the Tiahrt Rider.  The plaintiff CIR was an organization that reported, *inter alia*, on

17   the topic of guns in the United States.  *See CIR*, 14 F.4th at 934.  It submitted a FOIA request to

18   ATF asking for "records depicting the '[t]otal number of weapons traced back to former law

19   enforcement ownership, annually from 2006 to the present." *Id.* at 922.  One of the issues the

20   Ninth Circuit discussed was whether ATF's production of such records to CIR would "result in the

21   'publication' of this data." *Id.* at 934.  The court held that it would based on its interpretation of

22   the term "publication" as used in the Rider.

23                 [W]e begin with that word's plain meaning.  The plain meaning of
                   "publication" signifies "**disclosure to the public**, rather than the
24                 disclosure of information to another individual or corporation within
                   the context of a business or professional relationship." *Integrated
25                 Genomics, Inc. v. Gerngross*, 636 F.3d 853, 861 (7th Cir. 2011)
                   (collecting dictionary definitions); *see also* Oxford English
26                 Dictionary Online ("The action of making something publicly
                   known.").  In the legal context, the phrase generally suggests "the
27                 act of declaring or announcing to the public," Black's Law
                   Dictionary (11th ed. 2019), or "[n]otification or communication to a
28                 third party or to a limited number of people regarded as

14

1
2
3
4
5
6
7
8
9

> representative of the public," Oxford English Dictionary Online. Turning over data regarding firearms in the United States to "a reporter" or "a representative of the news-media" like [the plaintiff] CIR, which reports on the topic of guns in the United States, will **make that data "generally known" to the public**. Indeed, the record reveals that the requested data will play a role in CIR's upcoming "project" on gun violence. That ATF's compliance with its FOIA obligation will thus result in the publication of the data CIR seeks is not surprising: news media organizations are precisely the sort of "representative[s] of the public" through which individuals and entities commonly distribute information to the public. *Cf. Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) ("We have observed that the news media, when asserting the right of access, are surrogates for the public." (internal quotation marks and citation omitted)). Given that complying with its legal obligation under FOIA will make generally known the statistical aggregate data that CIR seeks here, the Tiahrt Rider authorizes ATF's expenditure of funds to complete this request.

10    *CIR*, 14 F.4th at 934 (emphasis added). The Ninth Circuit rejected the contention that

11    "'publication' refers only to the formalized distribution of prepared, formal information." *Id.* at

12    934; *see also id.* at 936 (noting that the Rider "permits publication of 'statistical aggregate data'

13    and not just statistical reports; "[t]he word 'data' does not carry an inference of formal

14    dissemination").

15         As reflected above, the Ninth Circuit defined "publication" broadly: any release of

16    information to an entity or person that will result in the information becoming generally known to

17    the public may satisfy the publication requirement under Exception C. In his FOIA request,

18    Plaintiff provided sufficient information to show that disclosure of the records requested would

19    result in that information becoming generally known to the public. Contrary to what Defendants

20    argue, Plaintiff's FOIA request was not conclusory. He stated in the request: "I have published

21    extensively on issues related to firearms trafficking in the Americas, including widely cited

22    research reports, op-eds in publications such as the *Los Angeles Times*, a documentary film, and a

23    web site dedicated to the issue." Siple Decl., Ex. A (FOIA request) (underlining in original). As

24    noted above, the underlined items were hyperlinks, *see* Siple Decl. ¶ 19 – *e.g.*, the hyperlink for

25    the *Los Angeles Times* led to an op-ed piece in which Plaintiff was the co-author; the hyperlink for

26    the documentary film led to a film co-directed by Plaintiff; and the hyperlink for the website led to

27    the website for Stop US Arms to Mexico (stopusarmstomexico.org), an organization for which

28

United States District Court
Northern District of California

1    Plaintiff is a director or coordinator.[5]  *See* Siple Decl. ¶¶ 21-23 & Ex. A.  In his declaration, Mr.

2    Siple suggests that the hyperlinked information should not be considered.  *See* Siple Decl. ¶¶ 25-

3    26 (stating that "ATF rests its determination on the contents of the FOIA request presented to the

4    agency" and that, "*[e]ven if* ATF were to consider the hyperlinked material referenced in that

5    request, it would still conclude that Plaintiff has not demonstrated that he is a representative of the

6    news media under 5 U.S.C. § 552(a)(4)(A)(ii) [the fee provision in FOIA]") (emphasis added).

7    But there is no principled reason to refuse consideration of the hyperlinks; the hyperlinks were

8    effectively attachments to the FOIA request.

9           Defendants protest that, even if the hyperlinks are considered, the publication requirement

10   has not been satisfied because they do not establish that Plaintiff is a representative of the news

11   media under 5 U.S.C. § 552(a)(4)(A)(ii) (which is the fee provision in FOIA).  There are several

12   problems with this argument.  First, even though *CIR* made clear that "[t]urning over data

13   regarding firearms in the United States to 'a reporter' or 'a representative of the news-media' . . .

14   will make that data 'generally known to the public," 14 F.4th at 934, that does not mean that

15   information can *only* become public if provided to a reporter or member of the news media.  *CIR*

16   could have easily so held but it did not do so.  It implicitly rejected the notion.  Second, even if the

17   publication requirement could be met only if information were given to a reporter or member of

18   the news media, Plaintiff meets the criteria of being a member of the news media under §

19   552(a)(4)(A)(ii).[6]  Section 552(a)(4)(A)(ii) provides that the "term a representative of the news

20   media' means any person or entity that gathers information of potential interest to a segment of the

21   public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that

22   work to an audience."  5 U.S.C. § 552(a)(4)(A)(ii).  Particularly in light of Plaintiff's op-ed piece

23

24   ───────────────────────

25   [5] The hyperlink for research reports led to an investigative report in the *Guardian* that cited
     Plaintiff and identified him as the director of Stop US Arms to Mexico.  *See* Siple Decl. ¶ 20; *see*
     *also* https://www.theguardian.com/world/2020/dec/09/mexico-cartel-project-weapons-import-
     trafficking (last visited 11/7/2023).

26

27   [6] For purposes of this opinion, the Court assumes, but does not hold, that the definition of
     "representative of the news media" in the fee provision of FOIA governs.  *See* 5 U.S.C. §
28   552(a)(4)(A)(ii).

United States District Court
Northern District of California

1   and his documentary film, Plaintiff is or is at the very least the functional equivalent of a member

2   of the news media for purposes of qualifying under Exception (C) of the Tiahrt Rider.[7]

3           2.        Statistical Aggregate Data

4           Defendants acknowledge that, if the Court rules in Plaintiff's favor on the publication

5   requirement, then the majority of Plaintiff's FOIA request is valid.  He seeks aggregate data.

6   Defendants contend, however, that one portion of the FOIA request is improper – specifically, to

7   the extent Plaintiff requested the zip code of any FFL where a traced firearm was purchased.

8   Exception (C) allows only for disclosure of "statistical *aggregate* data," but Defendants maintain

9   that, in at least some instances, revealing a "FFL's zip code would reveal the identities of

10  individual FFLs" and therefore would not be aggregate in nature.  Siple Decl. ¶ 30.[8]  Effectively,

11  Defendants argue that all zip code data must be precluded from release, given Defendants have not

12  yet run the dataset to determine specifically how many zip codes only contain one FFL and

13  threaten anonymity.  The Siple declaration explains as follows:

> ATF publishes on its website a monthly list of all FFLs. *See*
> https://www.atf.gov/firearms/listing-federal-firearms-licensees.  As
> of June 2023, this includes monthly reports dating back to January
> 2014.  Included in each of the publicly released data sets is the
> FFL's zip code.  As of May 31, 2023, there were 78,593 licensees
> with a license type of 1, 2, or 7.  The holders of any of these three
> license types are authorized to conduct retail firearm sales and are

---

[7] For purposes of this opinion, the Court need not consider Plaintiff's declaration, *i.e.*, because the information contained in Plaintiff's FOIA request sufficiently establishes that he is a member of the news media.  Nevertheless, the Court notes that Defendants conceded during the motion hearing that the information provided in Plaintiff's declaration sufficiently established that Plaintiff is, in fact, a member of the news media.  In light of this concession, even if the Court were to find that Plaintiff's FOIA request did not provide adequate information to show that he is a member of the news media, Plaintiff could simply submit a new FOIA request, seeking the same information and also providing his declaration in support.  Requiring Plaintiff to go through this exercise would exalt form over substance.  Remanding the matter back to the ATF to address this issue would serve no useful purpose.  It would also disregard the fact that the government, in denying the FOIA request, never questioned whether Plaintiff was a member of the news media. *See* Siple Decl., Exs. C, E (showing that Defendants rejected Plaintiff's FOIA request and appeal on the basis that the Tiahrt Rider applied, but not evaluating Exception (C), including whether Plaintiff was a member of the news media such that the publication requirement could be satisfied).

[8] The general public may access a list of FFLs online at https://www.atf.gov/firearms/listing-federal-firearms-licensees.  In theory, one could cross-reference zip codes of trafficked firearms with the publicly available list to ascertain which FFL sourced a specific firearm.

United States District Court
Northern District of California

> thus most likely to be involved in a traced crime gun.  Of the 78,593 FFLs with a license type of 1, 2, or 7, 13,544 FFLs (or approximately 17 percent of all FFLs with these license types) associate with a zip code in which only one (8,818) or two (4,726) FFLs have a place of business.  Accordingly, by identifying the zip codes to which recovered firearms were traced, there is a statistically significant chance that individual FFLs will be revealed.  As such, this data point cannot be considered aggregate data.

Siple Decl. ¶ 31.  The Siple declaration does not expressly explain what is meant by the phrase "statistically significant chance," but presumably the government is simply referring back to the fact that 17% figure above.[9]

Although Defendants' position here is not without any merit, there are several problems with the Siple declaration and the government's argument.

First, the Siple declaration proceeds on the assumption that "aggregate" data means anonymized data.  While this is not an unreasonable interpretation of the Tiahrt Rider, Defendants do not cite any authority in support for this interpretation of the Tiahrt Rider.  The Ninth Circuit's *CIR* decision does not clearly so state; the court simply defined "aggregate" as "a summary form of information 'formed by the collection of units or particles into a body, mass or amount'"; adding that "'[t]he total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present' . . . reflects an aggregated statistic derived from an underlying set of data").  *CIR*, 14 F.4th at 933.  Plaintiff's FOIA request falls literally within that literal definition.

Second, Mr. Siple's numbers analysis is predicated on only three license types being considered (types 1, 2, and 7).  Mr. Siple asserts that "the holders of . . . these three license types are authorized to conduct retail firearm sales and are thus most likely to be involved in a traced crime gun," Siple Decl. ¶ 31, but this is a relatively barebones explanation of why other license types should not be taken into account and how, if they are taken into account, this would change the statistics he cites.[10]

---

[9] If the Court were to consider zip codes with only one associated FFL (*i.e.*, instead of zip codes with two associated FFLs) for license types 1, 2, or 7, the percentage would be smaller: 11% (*i.e.*, 8,818/78,593).

[10] The types of licenses are:

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Finally, and most importantly, the Siple declaration reflects that ATF has not actually run

2    Plaintiff's FOIA request; rather, the agency has simply made an assessment that there is a

3    "statistically significant chance" that individual FFLs would be revealed.  Siple Decl. ¶ 31.  But it

4    is entirely possible that, if the agency were to actually act on Plaintiff's FOIA request, this

5    problem may not be encountered at all, or only a few single-FFL zip codes would be implicated.

6    It would not be surprising if firearms recovered in Mexico, Guatemala, Honduras, and El Salvador

7    were largely traced to larger, more metropolitan areas, which are more likely to have more than

8    one FFL in a zip code;  it is also conceivable that zip codes where there is only one FFL with an

9    applicable license(s) do not originate firearms recovered in the four subject countries.  Notably, in

10   *CIR*, the Ninth Circuit essentially admonished ATF for "not conduct[ing] a search of the FTS

11   database in response to CIR's request for statistical aggregate data."  *CIR*, 14 F.4th at 939-40; *see*

12   *also id.* at 940 (stating that "[w]e have an insufficiently developed record from which to determine

13   with any certainty whether the information CIR seeks could be produced by a reasonable search of

14   the FTS database or would require more significant analysis").

15   Given the deficiencies identified above, the Court has the discretion to ask the government

16   to supplement the Siple declaration or remand for further proceedings to ATF.  *See Frost*, 2018

17   U.S. Dist. LEXIS 57767, at *27-28.  The discretion to remand is particularly appropriate where

18   the government does not simply fail to explain what search it did and what documents were

---

- Type 01 - Dealer in Firearms Other Than Destructive Devices
- Type 02 - Pawnbroker in Firearms Other Than Destructive Devices
- Type 03 - Collector of Curios and Relics
- Type 06 - Manufacturer of Ammunition for Firearms Other Than Ammunition for Destructive Devices or Armor Piercing Ammunition
- Type 07 - Manufacturer of Firearms Other Than Destructive Devices
- Type 08 - Importer of Firearms Other Than Destructive Devices or Ammunition for Firearms Other Than Destructive Devices, or Ammunition Other Than Armor Piercing Ammunition
- Type 09 - Dealer in Destructive Devices
- Type 10 - Manufacturer of Destructive Devices, Ammunition for Destructive Devices or Armor Piercing Ammunition
- Type 11 - Importer of Destructive Devices, Ammunition for Destructive Devices or Armor Piercing Ammunition

https://www.atf.gov/resource-center/fact-sheet/fact-sheet-federal-firearms-and-explosives-licenses-types (last visited 12/16/2023).

1    withheld, but rather fails to actually conduct the search.  To ensure that the agency will provide a

2    sufficient explanation for the basis of its decision, the Court concludes that a remand would be

3    more appropriate under the circumstances presented here.  *See Nw.*, 254 F. Supp. 2d at 133; *cf.*

4    *CIR*, 14 F.4th at 940 (stating that, "[b]ecause ATF bears the burden of justifying that records were

5    properly withheld, we remand to the district court to provide ATF the opportunity to better explain

6    the nature of the FTS database, and determine whether CIR's search query will yield the

7    responsive information it seeks").[11]

### III.    CONCLUSION

9        For the reasons stated herein, the Court hereby grants in part Plaintiff's motion for

10   summary judgment, denies in part Defendant's motion, and remands for further proceedings

11   consistent with this decision.  The Court also stays further proceedings in this suit pending the

12   remand.

13       This order disposes of Docket Nos. 32 and 35.

15   **IT IS SO ORDERED**.

17   Dated: December 19, 2023

_____
EDWARD M. CHEN
United States District Judge

---

[11] The Court shall ensure no prejudice to Plaintiff by staying proceedings in this suit pending remand to the agency.  If, after remand, ATF continues to withhold documents, the Court should have the benefit of a fuller explanation as to why, and Plaintiff may continue to litigate this suit to seek disclosure of any withheld documents. *Cf., e.g., Bonnichsen v. United States Dep't of Army*, 969 F. Supp. 628, 651 (D. Or. 1997) (staying proceedings "pending completion of the administrative proceedings"; retaining jurisdiction "to ensure the protection of the [human] remains [that had been seized by the army], and the parties' respective interests concerning them, and to address any related problems that may arise on remand").

United States District Court
Northern District of California

20